FRANCIS, *Mayor, Appellant,* v. BLAIR *et al.*

89   291
96   516
89   291
153   35
89   291
s96   515
o158   523

1. **City of St. Louis : MAYOR : POLICE BOARD.** The mayor of the city of St. Louis is the chief executive officer of the city, charged to take care that the laws of the state and ordinances of the city are enforced in the city, and he cannot be deprived of his lawful control of the police force by the police board of said city.

2. —— : —— : ——. A resolution of the board of police commissioners of said city, adopted by it May 4, 1886, declaring the vice-president of the board its executive officer, and as such to be vested with the entire control of the police department, and of the chief of police at all times when the board is not in session, and that the chief of police should during said times receive and obey the orders of the vice-president only, held to be invalid because in conflict with the existing state statutes and the charter of the city.

3. **Injunction.** Injunction lies to prevent the board of police commissioners from enforcing said rule.

*Appeal from St. Louis Circuit Court.*—HON. A. M. THAYER, Judge.

Francis v. Blair.

REVERSED.

James O. Broadhead and Leverett Bell for appellant.

(1) The board of police commissioners is an administrative one and cannot remain continually in session. During the periods intervening between the sessions, it must have a mouth-piece to issue such orders as are necessary to carry out the policy of the board.. This duty, under the police acts of 1861 and 1863, falls to the president of the board. It is inherent in his office. See Laws 1863-4, 476; State, etc., v. St. Louis County Court, 34 Mo. 567. (2) The city charter (article 4, sec. 15) makes the mayor the chief executive officer of the city and it also provides (sec. 16) that he shall take care that the laws and ordinances of the city are respected and enforced in the city. These charter provisions had the effect to repeal so much of the law establishing the police force as took away from the mayor all authority and control over the force, and so much of the act as authorized the board of police commissioners to enforce the ordinances passed by the city of St. Louis which may be properly enforceable by a police force. The power given to the mayor under the charter of 1876 is complete and general.

Given Campbell, A. & J. Lee and J. M. Holmes for respondents.

(1) The constitution of the board should be accurately noticed, for there is a clear distinction between a member of the board and a police commissioner. People v. Commissioners, 5 Abb. Pr. 241. (2) A president as such has no power except to preside over the deliberations of the body of which he is president, whether that body be a legislative, an executive or an administrative

body.   Ang. & Ames on Corp., 298, 299 ; Morawetz on
Corp., 249, 251, 252 ; *Hodge, Ex'r, v. Bank*, 22 Gratt. 58 ;
*Bank v. Loan & Trust Co.*, 14 Wis. 330, and cases cited ;
*Titus v. Railroad*, 37 N. J. L. 98.   (3) The intent of the
legislature to vest the control of the force in the state re-
mained as before, and this was expressly held by this
court in *State v. St. Louis County Court*, 34 Mo. 567.
(4) When the board adjourns, the connection of the
mayor with the force is at an end, and he is prohibited
from interfering with it.   *People v. Commissioners*, 5
Abb. Pr. 241.   (5) It is not claimed for the vice-presi-
dent any power by reason of his office other than
specially given him by the act.   So long as every act to be
performed is subject to the approval of the board his act
derives its authority from their approval, and not from
any power of the vice-president.   The board is required
by law to exercise its duties at all hours of the day and
night, and the manner of the exercise of those duties is
nowhere prescribed, there being in the law no special
duty imposed upon the chief of police or any other of
its employes.   In the absence of statutory provision to
that effect, it had the power to appoint such agents as it
saw fit, to enable it to perform its duties.   Whart. on
Ag. [Ed. 1876] secs. 29, 33 ; Morse on Banks & Banking,
128 ; Morawetz on Corp., secs. 249, 252 ; *Floyd Accep-
tances*, 7 Wall. 676 ; *Wilcox v. Jackson*, 13 Pet. 513 ;
*Walsey v. Chapman*, 101 U. S. 755 ; *Titus v. Rail-
road*, 37 N. J. L. 98 ; *Bank v. Loan & Trust Co.*, 14
Wis. 330 ; *State v. Gates*, 67 Mo. 143.

HENRY, C. J.— The appellant, on May 5, 1886, filed
in the St. Louis circuit court a petition for an injunc-
tion, in words and figures as follows :   "Plaintiff states
that he is the mayor of the city of St. Louis, duly
elected to said office and in possession of the same, and
in the exercise of the duties, functions, rights, privileges
and powers pertaining and belonging to said office.

That the defendants are members of the board of police commissioners of said city of St. Louis, duly appointed and commissioned to said board under the law in such cases made and provided. That the said board of police commissioners of the city of St. Louis was created and exists by virtue of eleven certain acts of the general assembly of the state of Missouri, which acts are approved respectively March 27, 1861; December 12, 1863; February 5, 1864; January 25, 1865; February 18, 1865; January 23, 1866; March 15, 1866; March 13, 1867, March 24, 1873; February 17, 1875; and March 23, 1875, and that the provisions contained in the above enactments, are compiled and printed at pages 1,527 and following of the second volume of the Revised Statutes of Missouri in 1879. That it is provided by section 3 of the act of March 27, 1861, above referred to, as amended by section 1 of the act of December 12, 1863, also above referred to, that the board of police commissioners of the city of St. Louis shall consist of four commissioners, with the mayor of said city for the time being, or whosoever may be lawfully acting in that capacity, who shall be ex-officio president of said board, and said board shall appoint one of their members as vice-president, who shall act during the absence of the president. It is further provided by the laws aforesaid that the four commissioners, being the commissioners other than the mayor of St. Louis, shall be appointed by the governor of the state of Missouri by and with the advice and consent of the senate; and it shall be the duty of said police board within the city of St. Louis to preserve the public peace, prevent crime and arrest offenders, protect the rights of persons and property, guard the public health, preserve order at elections, at public meetings and places of public occasions, prevent and remove nuisances, provide police protection at fires, protect emigrants and travelers, and enforce the observance of laws relating to elections, to Sunday, to pawn-

brokers, gamblers, intemperance, lotteries, vagrants, disorderly persons, and the public health, and to enforce all ordinances of the city and laws of the state which may properly be enforceable by a police force; and to make rules and regulations not inconsistent with the above acts for the appointment, employment, uniforming, discipline, trial and government of the police, which shall be obeyed by the force on pain of dismissal, or other lighter punishment, as the board may adjudge. The plaintiff states that since he has held the office of mayor of St. Louis he has attended the meetings of said board, and has at all times been and is now ready and willing to act with said board, and to exercise the power, duty and authority imposed and conferred on him as mayor of the city of St. Louis by the above mentioned acts, and that he has duly qualified as a member of said police board by taking and filing the oath prescribed in section 2 of the act of March 27, 1861, aforesaid. That at a regular meeting of said board of police commissioners, held in the city of St. Louis, on the fourth day of May, 1886, the board adopted a preamble and resolution, in words and figures as follows:

"'Whereas, in the opinion of this board, it is the meaning and intention of the law establishing the metropolitan police system in this city that the entire management and control of the department should be in the hands of the board of police commissioners, and through them, in such one of their number as they might select as vice-president; and,

"'Whereas, such has been the uniform custom of the department from the beginning; now, therefore, to remove any misapprehensions which may exist in the premises, rule number 12 of the manual is hereby declared to mean that the vice-president is the executive officer of the board, and shall at all times, when the board is not in session, have the entire management and control of the department, subject always to the appro-

val of the board ; and, further, that the chief of police shall, between the meetings of the board, receive and obey the orders of the vice-president only. That rule 12 of the manual, above referred to, is as follows :

" ' Rule 12. " The acting president of the board shall have a general supervision, and it shall be the duty of the chief of police and commanders of districts to keep him well informed on all police matters." '

" That the above preamble and resolution were adopted by the votes of the four defendants herein, against the protest and vote of the plaintiff, and that the said defendants are now enforcing the same. That the said preamble and resolution are invalid and illegal, and of no force and effect, because the same are in violation of and inconsistent with the acts of the legislature above referred to, constituting and governing said board ; and that the effect of the same and the enforcement thereof is to strip the plaintiff, as mayor of St. Louis, of the power and authority conferred on him by the acts of the legislature aforesaid, and to deprive the people of St. Louis of the control they are authorized by their mayor to exercise, under the laws aforesaid, over the operations of said board and the management of the police force in said city. The plaintiff prays that the defendants, and each of them, may, by the order of the court, be restrained and enjoined from further enforcing said preamble and resolution, and that the same may, by the judgment of this court, be declared void, invalid and of no force and effect, and for such other and further relief as he is entitled to."

The petition was duly verified, and the circuit court made an order on the defendants therein named to show cause on May 8, 1886, why the injunction should not be granted. On the day named the defendants made return to the rule as follows :

" Now come the defendants in the above entitled cause, James L. Blair, W. H. Lee, Frank Gaiennie, by

attorney, and O. P. Gooding, *in propria persona*, and for a return to the rule heretofore issued by this court, requiring them to show cause why an injunction should not issue against them from this court, say :

"1. That the petition praying for such injunction does not state facts sufficient to constitute a cause of action.

"2. That it affirmatively appears upon the face of said petition that plaintiff is not entitled to the relief therein asked.

"3. That it appears upon the face of the petition that defendants had legal right to pass the preamble and resolution set forth in said petition and to enforce the same.

"4. That there is no equity in said petition.

"5. That it appears upon the face of the petition that plaintiff has a remedy at law.

"Wherefore these defendants pray that the restraining order heretofore issued against them may be cancelled, and that the said rule upon them to show cause may be discharged, and that they be hence dismissed with their costs in this behalf incurred and expended."

Afterwards, on May 17, 1886, the rule was discharged and the injunction refused, and plaintiff declining to plead further, the court entered a final judgment dismissing the petition, from which plaintiff has appealed to this court.

The question presented by this record is whether the resolution adopted by the St. Louis board of police commissioners the fourth day of May, 1886, is valid, declaring the vice-president of the board its executive officer, vested with the entire management and control of the police department and of the chief of police at all times when the board is not in session, and that the chief of police between meetings of the board shall receive and obey the orders of the vice-president only ?

Prior to 1861, when the act creating a police board

was enacted, the mayor of the city of St. Louis was its chief executive officer, charged with the duty to see that the laws of the state and the ordinances of the city were duly enforced within the city. By the act of 1861 this duty and authority were transferred to the police commissioners, consisting of four to be appointed by the governor, together with the mayor, by the act, made ex-officio a member. That act took from the mayor the control of the police force of the city and gave the exclusive management of the force to the board, and the force was to be subject to no other control. In section 14 of that act it is expressly provided that all ordinances of the city are annulled, so far as they "confer upon the mayor, or any other person or persons, the power to appoint, dismiss, or in any way, or to any extent, employ or control any police force, organized or to be organized under such ordinances, or any of them." The language of the act of 1861, establishing the police board, is as follows: "There shall be and is hereby established within and for the city of St. Louis, a board of police, to be called the police commissioners, of the city of St. Louis, to consist of four commissioners as hereinafter provided, together with the mayor of the city for the time being, or whoever may be lawfully acting in that capacity." It is urged that under the act of 1861, the mayor was not a police commissioner, but only a member of the board of police commissioners. The above quoted section establishes a board of police, to be called police commissioners. That four were to be appointed by the governor, the other having been named by the General Assembly, certainly establishes no distinction between their official character or functions. This, however, in the view we take of the question, is immaterial. By the act of 1861, no provision was made for the election or appointment of a president, or vice-president of the board; but, in 1863, an amendatory act was passed by the General Assembly which provided

that, "The mayor shall be ex-officio president of the board, and the board shall appoint one of their members as vice-president, who shall act during the absence of the president." If this is to be construed as meaning that the vice-president, at meetings of the board, in the absence of the president from the meeting, should act as president of the board at such meeting, the provision was wholly unnecessary, because that right and duty devolved upon him, from the very nature of his office. The provision has a different meaning and wider scope, and contemplates the absence of the mayor from the city, or his inability to act, for any reason. Section 35, page 1,536, Revised Statutes, provides that: "No person shall act as private watchman, private detective and private policeman in said city, or county, without first having obtained the written license of the president, or acting president, of the said police commissioners." The acting president is the president, or, in his absence, the vice-president. There is no provision for an acting president other than the president or vice-president. By the act of March 19, 1866, section 1, article 6, it was declared that, "The chief executive officer of the city shall be the mayor." And by section 7 it was made his duty to take care "That the laws of the state and the ordinances of the city are duly enforced, respected and obeyed within the city."

By section 11, of the act of March 13, 1867, "The members of the police force of the city of St. Louis, organized and appointed by the police commissioners of said city, are hereby declared to be officers of the city of St. Louis under the charter and ordinances thereof, and also to be officers of the state of Missouri, and shall be so deemed and taken in all courts having jurisdiction of offences against the laws of the state or the ordinances of said city." Now, while it is clear that the act of 1861 was intended to and did effectually deprive the mayor of the city of St. Louis of any control over

the police force of the city, the contrary intent is manifest in the subsequent legislation. He is made the chief executive officer of the city, charged to take care that the laws of the state and the ordinances of the city are duly enforced, respected and obeyed within the city. Was it expected that that grave and important duty should be performed by him without the use of such means as are usually at the command of the chief executive officer of a city—policemen—or other constabulary force? And what meaning is to be given to that provision of the act of 1867 declaring the police force of the city "to be officers of the city of St. Louis?" If they are officers of the city, can it have been the intent of the law-makers that the chief executive officer of the city, charged with the duty of seeing that the laws of the state, as well as the ordinances of the city, are enforced within the city, should have no control whatever over such subordinates, to charge him with a duty and deprive him of the means of properly discharging that duty? The police force of the city is the only constabulary force of the city. Constables are officers of the state, and if he has no control of the police force of the city, he has no subordinate officers, by whom he can discharge the duty imposed upon him. By the charter of the city, adopted in 1876, it is also provided (sec. 15, art. 4) that: "The mayor shall be the chief executive officer of the city," and by section 16 it is made his duty to "take care that the laws of the state, and the ordinances of the city are respected and enforced within the city."

In the light of these enactments, the proposition that the board of police commissioners can deprive the mayor of the city of all control over the police of the city and give it to a state officer, one of themselves, cannot be maintained. The fifth section of the act of 1861 provided that, "The board of police commissioners shall enforce all laws and ordinances passed, or which may

hereafter be passed by the common council of the city of St. Louis," and it is worthy of observation, that by the act of 1867, this very duty is imposed, in almost the same language, upon the mayor of the city. The entire legislation, since 1861, seems to have had in view the restoration to the mayor of the power taken from him by the act of 1861. The mayor does not, or at least cannot, claim the authority in question by virtue of the fact that the act creating the board of police commissioners, declares that, "The mayor of the city  *   *   *  shall be ex-officio president of the board." In this we think the circuit judge erred. The mayor's claim is based upon that and the other acts making him the chief executive officer of the city, and charging him with enforcing the law and ordinances. Nor is it maintainable that either the vice-president, or the president, the latter being in the city and on duty, shall control the police force. This would lead to a conflict of authority. It could not have been intended, nor is there any provision in either of the several acts of the legislature on the subject, which warrants the assumption that both of the two officers shall severally have the exclusive control of the force. It would be absurd, and a law would have to be clear in such an intent before it could be so construed.

It is not necessary, and perhaps would be improper to consider, what led to the extraordinary legislation of 1861 on the subject of the police of the city of St. Louis. Whatever prompted it, it is clear that the intent was to take from the mayor of the city all control of the police and vest it in the board of police commissioners; and we are of the opinion that the intent to restore that control to the mayor is equally manifest in the subsequent legislation on the subject, and that the resolution of the board, adopted on the fourth day of May, 1886, is of no validity whatever, being in conflict with what we understand to be the meaning of the several acts of the General

Assembly enacted since 1861, and especially those of 1866, 1867, and the charter of the city adopted in 1876.

It is contended that injunction will not lie in this case, the plaintiff having a remedy at law. What is that remedy? He cannot institute a *quo warranto* proceeding, because the right of defendants respectively to the office of police commissioner is not controverted. *Quo warranto* "is resorted to for the purpose of testing a civil right, by trying the title to an office or franchise, and ousting the wrongful possessor." High, 603. He cannot have a writ of prohibition, because that is "an extraordinary writ, issuing out of a court of superior jurisdiction and directed to an inferior court, for the purpose of preventing the inferior tribunal from usurping a jurisdiction with which it is not legally vested." High on Extraordinary Legal Remedies, sec. 762. The police board is not a judicial tribunal. High, in his work on Injunctions, says: "But a ministerial officer whose rights and powers are conferred by statute, upon certain conditions, may be enjoined from acting contrary to authority, if his acts are likely to result in public injury, such a case being distinguishable from that of a municipal corporation exercising legislative functions or discretionary powers." Sec. 797.

The police commissioners are not strictly ministerial officers, it is true; but they have no judicial functions to perform, except in matters to which the resolution challenged has no relation. Their general powers are executive, but we see no reason why an injunction will not lie against them, as against a purely ministerial officer, to restrain them from the commission of acts "likely to result in public injury." If an injunction will not lie the plaintiff has no remedy whatever. He has, neither as an individual, nor an officer, sustained any injury not common to the entire community, nor any special damage for which he may sue and recover judgment. The result of the argument against the

remedy sought by plaintiff would be, if sustained, to strip the mayor of the executive power conferred upon him by the law, and render him powerless to discharge the grave and responsible duties imposed upon him by the law of the land. If he has the right the law will afford a remedy to enforce that right, and any remedy adequate to accomplish the end known to the law may be resorted to.

The judgment is reversed and the cause remanded, with directions to the circuit court to proceed in the cause in conformity with this opinion, in which all the judges concur.