FRANCIS, *Mayor,* v. BLAIR *et al., Police Commissioners, Appellants.*

1. **Board of Police Commissioners of St. Louis: EXECUTIVE OFFICER IN VACATION: MAYOR.** The mayor of the city of St. Louis is not the executive officer of the board of police commissioners when the board is not in session. (*Overruling Francis v. Blair,* 89 Mo. 221).

2.  ——— : ——— : VICE-PRESIDENT. The board has no authority to provide that, when it is not in session, the vice-president shall be its executive officer with full control of the department, subject to the approval of the board.

3.  ——— : ———. The chief of police and other members of the police force are its executive officers.

*Appeal from St. Louis City Circuit Court.*—HON. A. M. THAYER, Judge.

AFFIRMED.

*J. M. Holmes* and *F. A. Wislizenus* for appellants.

(1)   The antagonism between the metropolitan and the municipal systems is such that they cannot coexist. (2)   The mayor, though a member of the board, is not a commissioner. *State ex rel. v. Police Commissioners,* 5 Abb. Pr. 241. (3)   The police power is vested primarily in the state, and not in the city ; the act of 1861 prohibited the exercise by the city of police powers ; and no act has been passed since repealing the act of · 1861, directly or by implication. 1 Dill. on Mun. Corp., sec. 210, and cas. cit. ; *Burch v. Hardwick,* 30 Gratt. 40 ; *Railroad v. Cass County,* 53 Mo. 17.

*Jas. O. Broadhead* and *Leverett Bell* for respondent.

BLACK, J.—This case was here before on a demurrer to the petition, and is reported in 89 Mo. 291. Though it has been tried on petition and answer, the case now made is not essentially different from what it was when it stood on the petition. For some of the details, and some points not now in dispute, reference is made to the opinion then filed.

The plaintiff is the mayor of the city of St. Louis, and a duly qualified member of the board of police commissioners of that city. The defendants are the

four commissioners appointed by the governor as members of the board. At a meeting of the board, a resolution was adopted, over the protests of the plaintiff, which is as follows:

"Whereas, in the opinion of this board, it is the meaning and intention of the law establishing the metropolitan police system in this city, that the entire management and control of the department should be in the hands of the board of police commissioners, and through them, in such one of their number as they might select as vice-president; and whereas, such has been the uniform custom of the department from the beginning; now, therefore, to remove any misapprehension which may exist in the premises, rule No. 12 of the manual is hereby declared to mean, that the vice-president is the executive officer of the board, and shall at all times, when the board is not in session, have the entire management and control of the departments, subject always to the approval of the board; and further, that the chief of police shall, between the meetings of the board, receive and obey the orders of the vice-president only."

1. The plaintiff insists that this resolution is invalid, because it deprives him of rights and powers vested in him by law. The first specific issue will be best understood by stating the claims of the litigants in the language of their counsel, namely: The mayor's position is that the state law has made him president of the board, and that he has the right to speak for it when not in session, and to issue such orders as are necessary to give effect to the will of the board; that he is the executive officer of the board, selected and named by the legislature for that purpose. Defendants say the mayor is in no sense of the term a police commissioner, has no power as such, and has no power whatever in police matters, save as a member of the board while it is sitting.

The board of police commissioners was established in 1861. Acts of 1860–61, p. 447. The mayor of the city has been a member of the board from the time it was established. Reference will be made to this act and the amendments thereto as compiled in Revised Statutes 1879, p. 1528. Section 2, among other things, provides : "There shall be and is hereby established within and for the city of St. Louis, a board of police commissioners of the city of St. Louis, to consist of four commissioners, as is hereafter provided, together with the mayor of said city for the time being, or whosoever may be lawfully acting in that capacity, who shall be *ex-officio* president of said board ; and said board shall appoint one of their members as vice-president, who shall act during the absence of the president." The said commissioners shall be citizens of this state. Before entering upon the duties of their said office, the said commissioners and the said mayor shall take and subscribe the oath. A majority of the board of police shall constitute a quorum ; and the failure or refusal of the mayor or acting mayor of the city of St. Louis to qualify or act hereunder shall in nowise impair the right or duty of said commissioners to organize and proceed as herein provided. Other sections of the law make it the duty of the governor, with the advice of the senate, to appoint four commissioners. Vast powers are conferred upon the board, as a board, and to execute these powers the board is required to appoint a permanent police force.

It is to be observed that these statutes, in speaking of the board as a board, designate it by the terms, "board of police commissioners of St. Louis," "board of police," and "police commissioners." When the four persons, appointed by the governor, are mentioned, they are designated, in general, "commissioners." There can be no doubt but the mayor, when he qualifies by taking the oath, is a member of the board. He is as

much a member of the board as any one of the four persons designated by the governor. His duties in the board are the same as that of either of the commissioners. In short he is a police commissioner.

His claim to be the executive officer of the board, when not in session, is based on these words, "who shall be *ex-officio* president of said board; and said board shall appoint one of their members as vicepresident, who shall act during the absence of the president," which clause became a part of section 2, by the amendatory act of December 12, 1863. This language shows that the mayor is the presiding officer of the board while it is in session, and when he is present. If he is not present at the meeting, whether he be in or out of the city, the vice-president is the presiding officer. The mayor, whilst presiding, possesses those powers incidental to a presiding officer ; but there is nothing at all in this section, or in the law in its general scope, that makes the mayor the executive officer of the board, or entitles him to speak for it, when not in session. The chief of police and other members of the police force are the executive officers of the board. This conclusion is supported by the fact that section 19 makes it the duty of the board to " cause a full journal of their proceedings to be kept." When not in session, the journal speaks for the board, and not the president, or vicepresident.

But the plaintiff places much reliance upon certain provisions of the charter of St. Louis, adopted in 1876. Section 16 of article 4 (2 R. S. 1879, p. 1592), provides that the mayor "shall take care that the laws of the state and the ordinances of the city are respected and enforced within the city." Paragraph 2 of section 26, article 3, provides that the mayor and assembly shall have power to establish and maintain a system of police, "provided, that no system of police shall be established

Francis v. Blair.

or maintained other than the present metropolitan system as long as the same is established by law." The mayor would doubtless have the right to call upon the officers and members of the police force to execute the laws in accordance with established regulations of the board of police. But the general power to see that the laws and ordinances are enforced gives him no right to speak for the board, or to perform any function devolved upon it as a board. It is clear that the powers and duties of the board and of the members thereof depend upon the statutes relating to the board of police, and are in no wise governed by these charter provisions. The claim of the mayor that he may issue orders and speak for the board, when not in session, is extravagant and without support in law. He has no more authority in this respect than any other one of the police commissioners. To give sanction to this claim of the plaintiff is, in effect to defeat the very purpose which the legislature had in view in putting the police under the control of commissioners.

2. The next question is, whether the board of police commissioners has the authority to delegate to any member the powers attempted to be conferred upon the vice-president by this resolution. The preamble asserts the proposition that the entire management and control of the police department should be in the police commissioners, and through them, in one of their number, selected as vice-president. The resolution declares that the vice-president is the executive officer of the board, and then attempts to confer upon him the entire management of the department when the board is not in session. The meaning of this resolution is plain. Its object is to devolve upon one man those powers and duties which the law has confided to the judgment of five persons. This the board has no right to do. A brief rehearsal of the law is enough to verify this conclusion. The powers and duties, which are

many and far-reaching in their results, are in almost every instance conferred upon the board as a body, and not upon the individual members thereof. To carry into execution these powers, the board is authorized to employ and appoint a police force, with a chief of police and various other officers, and to make rules and regulations for the government and discipline of police force. In a few instances, express powers are given to individual members of the board. Thus, the police commissioners, or any of them, may administer oaths (sec. 5); the acting president of the board may issue warrants for the seizure of gambling devices (sec. 27); and he may issue search warrants (sec. 30); no person can act as a private watchman, detective or policeman, until he procures the written license of the president or acting president of the police commissioners (sec. 35). These few instances of express authority conferred upon individual members of the board serve to demonstrate what otherwise appears from the general scope of the law, that the general powers of the board are to be performed by it as a body and cannot be delegated to any member, be he president or vice-president. By sections 22 and 23, passed in 1865 and 1873, power is conferred upon the municipal assembly to increase and decrease the police force on the recommendation of the police commissioners, and to fix the salaries of the officers and patrolmen. These sections and some others take away from the board some of the powers that were formerly vested in it, but they in no wise affect the question now under consideration.

The judgment of the circuit court, pronouncing the resolution invalid, is therefore affirmed; but what is said in the former opinion of this court, in conflict with what is herein stated, is overruled. RAY, J., absent; the other judges concur.