AMERICAN FIRE ALARM COMPANY, Appellant,
v. BOARD OF POLICE COMMISSIONERS et al.

*Division One, December 30, 1920.*

1. **METROPOLITAN POLICE: State Agency.** The municipal police officers, including the members of the police boards, of St. Louis and Kansas City, constitute a part of the agencies adopted by the State to preserve the peace and protect the legal rights of persons. The expense of the police system in such cities, including the expense of the boards of police, is borne entirely by the cities and paid out of their respective treasuries, in a manner prescribed by statute; but though the city carries the expense of the board of police and the police system generally, it does this as the agent of the State, and in pursuance to its laws, which it has no discretion about obeying.

2. ————: **Alarm Boxes: Power to Buy.** The power of the Police Commissions of Kansas City is not restricted to "the renting of apparatus for police alarms," but they have power to purchase and contract for the purchase of such alarm boxes.

3. ———: Contract to Purchase Boxes: Failure to Pay: Damages: Mandamus. In a suit on a contract with the Police Commissioners of Kansas City for the purchase of police alarm boxes, in which plaintiff demands payment for boxes delivered and accepted, and for damages for boxes completed under said contract and refused, wherein plaintiff has the right to affirm and the Commissioners to deny that the boxes complied with the, specifications of the contract, that they were delivered or tendered, or have not been paid for, or the obligation to take them has not been released, mandamus is not the remedy; but the appropriate proceeding is an action at law, wherein either party may demand a jury and the claim be established by a verdict and a judgment, which the city must pay if it is included in the estimate of the expenses made by the Commissioners; and if they will not so include it, then mandamus would be appropriate to compel them to do so.

4. ———: ———: Civil Liability. The Board of Police and the police system of Kansas City generally do not compose a department of the. municipal government, and hence the rule that no action will lie against a department of a municipality does not control the question of the liability of its Board of Police or its Police Commissions to be sued on a contract.

5. ———: ———: ———: Expense Not Settled by Auditor. Although the police system of Kansas City is a state institution, yet as the expense for its maintenance is paid out of the city treasury, the items of cost are not embraced within the statute which requires the State Auditor to audit, adjust and settle all claims against the State and payable out of the State Treasury.

6. ———: ———: ———: Demand for Money: Party Defendant. A demand for money arising under a contract entered into between plaintiff and the Police Commissioners of Kansas City cannot be presented for payment either to the officials of the city or to those of the State, but must be presented to the Police Commissioners, and if they .refuse payment, plaintiff's recourse by action, if any he has, must be against them, either sued in the name of a distinct entity, as was mistakenly done in this case, or in their individual names, but in their official capacity. The precise question, in such an action, is the proper defendant or defendants, rather than whether the Board of Police is a *quasi*-corporation.

7. ———: Quasi-Public Corporation: Action on Contract. The Board of Police of Kansas City is not a *quasi*-public corporation in any such sense as will authorize a suit against it on a contract. Even if it be admitted that the Police Commissioners compose a body corporate, in the absence of a statute giving to the body a distinctive name whereby it may sue and be sued, an action will not lie against it by any name a suing plaintiff may choose to adopt,

Am. Fire Alarm Co. v. Board of Police Comsrs.

nor by any other name or style than the names of its members. But it does not follow that, if the board is not a corporate body, an action based on a valid contract made by it will not lie against its members in their own names, but not in their personal capacity.

8. ———: **Police Commissions: Liable to Action on Contract.** When public officers are entrusted with definite powers and duties, and in the course of their duties and acting within their powers, they give rise to legal rights in other persons, especially when such rights grow out of a contract, and no way exists to enforce them except by an action against the officers as such, an action will lie against them. This is the doctrine of the common law, and statutes on the subject are mainly declaratory of the common law.

9. **QUASI-PUBLIC CORPORATION: Definition.** The words "*quasi-corporation*" is a phrase applied to a body which exercises certain functions of a corporate character, without having been created a corporation by any statute, general or special; but they cannot be defined with precision. In some bodies which have been accorded ·corporate character in judicial rulings, without having been incorporated by an express legislative act, the dominant fact was a defined territory with power to act and contract through its governing officers, such as counties or school districts; in other instances, groups of persons entrusted with public functions, like overseers of highways and boards of education, have been regarded as *quasi*-bodies politic, but these are such only because they are so recognized by the statutes or immemorial usage. The most influential circumstance whereby to determine whether or not public officials are *quasi*-corporations is that the law, either by immemorial usage or by the implications to be drawn from relevant enactments, has recognized ·them as such, without expressly declaring them to be.

10. ———: ———: **Power to Contract.** It is an extravagant notion that every officer or body of officers vested with power to make contracts to a limited extent which are not binding on them personally is, by that fact alone, made into a corporation.

11. ———: **Police Commissioners.** The Police Commissioners of Kansas City are not a body politic by immemorial usage, and they have not been erected into a corporation by legislative acts. While they have power to make contracts within a small compass, they are not authorized to use a seal; they are not spoken of in the statutes as a corporation; the title of the property which may be acquired by their action is not required to be vested in them as a body corporate; they have been given no distinctive name, certainly not the name of "Board of Police Commissioners," and hence by that name they cannot be sued, since the statutes do not say that they shall have power, as such, to sue or be sued.

12. ————: Different Boards and Commissions Collated: Powers of Each. The manner in which the many boards and commissions for public purpose have been established and the different powers conferred suggest that the Legislature has pursued a policy of selection in the matter of incorporating them. Those created corporations with ·enumerated faculties are enumerated in the opinion; those not expressly declared to be bodies corporate, but with power conferred to sue and be sued, are likewise enumerated; and others which have neither been created corporations nor declared capable of suing or being sued, are also enumerated.

13. **METROPOLITAN POLICE: Sued As Quasi-Corporation: Style of Suit.** The Board of Police of Kansas City not having been endowed with a name or other corporate attributes, actions against the board should be instituted in the name of the members and in their official character.     A petition entitled, "American Fire Alarm Company, Plaintiff, v. Board of Police Commissioners of Kansas City, Missouri, now Composed of James Cowgill, President, John R. Ranson and John Halpin, Commissioners, Defendant," is subject to demurrer, since the Board of Police Commissioners is not a body politic, and an action cannot be maintained against it as such, and the Police Commissioners are not mentioned either in the title or the body of the petition by way of making them parties.

14. ————: ————: ————: Parties: Service. The mere mentioning of Police Commissioners in the title and in the body of the petition, but not by way of making them parties, cannot be accepted as sufficient to make them parties and to authorize them to be served with process, as they must be if parties. Where they are sued as an entity and as a single defendant, service of process upon them personally is not necessary, but only on the chief officer.

15. ————: Action on Contract: Ultimate Liability. An action for the balance due for police alarm boxes sold and delivered under a contract between plaintiff and the Police Commissioners of Kansas City, an action of *indebitatus assumpsit* for the value of boxes delivered and accepted under said contract, and an action for damages for breach of said contract by refusing to accept boxes completed and ready to deliver at the time of the breach, may be maintained against the Police Commissioners in their own names and in their official character, and the ultimate liability, if any, is on the city, and not on the State.

Appeal from Jackson Circuit Court.—*Hon. Clarence A. Burney*, Judge.

AFFIRMED.

*Darius A. Brown* and *J. M. Johnson* for appellant.

(1)   Defendant, Board of Police Commissioners, is a *quasi*-municipal corporation possessing all elements of a legal entity.   Art. XVII, Chap. 84, R. S. 1909; State ex rel. v. Jost, 265 Mo. 51;   State ex rel. v. Jost, 269 Mo. 248; Clarissey v. Fire Department, 1 Sweeney (N. Y.) 224; Police Commrs. v. City of Louisville, 3 Bush. (Ky.) 597; McQuillin on Municipal Corp., sec. 111; Vincennes University v. Indiana, 14 How. (U. S.) 268; 27 Cyc. 128; Scates v. King, 110 Ill. 456; Richardson Co. School Dist. v. Ins. Co., 103 U. S. 707.   (2)   In the enactments comprised in Art. XVII, Chap. 84, R. S. 1909, the Legislature, as it had the power to do, recalled from cities of the class to which Kansas City belongs all power of supervision and control over the police department and conferred those powers and functions upon a separate, independent legal entity designated as the Board of Police Commissioners.   Authorities above. (3)   The provision for perpetual succession coupled with the investiture in the Governor of the power of appointment, the provision giving funds to the board, and the disposition thereof, and empowering the board to acquire property free from the domination, control or regulation of the city, completed the elements requisite to the creation of an independent corporate being endowed with the exercise of business functions recalled by the State from the city.   Authorities above; also Harris v. Mortgage Co., 244 Mo. 664.   (4) With the power to regulate and control, to arm and equip, and to make contracts, the board was invested with the implied authority to sue and be sued.   A *quasi*-corporation has such capacity whether or not the same be expressly conferred.   Authorities above.   Also Commonweath v. Green, 4 Whart. (Pa.) 531, 598; Elliott on Municipal Corp. sec. 3, p. 7; 35 L. R. A. (N. S.) 243; Trevett v. Prison Assn., 50 L. R. A. 564; Gross v. Ken. Board of Mgrs., 105 Ky. 840; Hopkins v. Agricultural College,

221 U. S. 636; People v. Batcheler, 53 N. Y. 128; Winslow v. Perquimans Co., 64 N. C. 218; Parsons v. Levy Dist., 178 S W. (Mo.) 280; Levy Court v. Coroner, 2 Wall. (U. S.) 501.   (5) It was not *ultra vires* the board to purchase the boxes and to enter into a contract for the purchase of the same.   While it may be conceded the board could not ratify an act which was *ultra vires,* the powers being conferred upon the board by statute it could ratify the unauthorized act of a subordinate which if done by the board itself would be *intra vires.* Central Transportation Co. v. Pullman Pal. Car Co., 139 U. S. 24; McQuillin on Municipal Corp., sec. 1172; Edwards v. Kirkwood, 147 Mo. App. 599.   (6) Mandamus is not a remedy open to plaintiff since a plain and adequate remedy exists at law.   Flannigan v. Kansas City, 69 Mo. 462; Sanford v. Kansas City, 69 Mo. 466; Riley v. Kansas City, 31 Mo. App. 446, 14 L. R. A. 773; Smith v. Berryman, 173 Mo. App. 148;   State ex rel. Heller v. Thornfield, 174 Mo. App. 469; 26 Cyc. 306, 311; Mansfield v. Fuller, 50 Mo. 338; State v. Macon Co. Court, 68 Mo. 29; Payne v. School Dist., 87 Mo. App. 418; Claude v. Pierce City, 86 Mo. 37.   (7) Since the board has perpetual succession, the contract was one it had authority to make regardless of the fact that the contract provided for performance extending beyond the term of office of the incumbent members of the board.   Pattison v. Uba County, 13 Cal. 175; Hallenbeck v. Hahn, 2 Neb. 399; Manley v. Scott, 108 Minn. 142; Chapman v. York Co., 79 Me. 267; Pegram v. Cleveland Co., 65 N. C. 114; Monroe Co. v. Strong, 78 Miss. 565; Platter v. Elkhart Co.; 103 Ind. 360; Grannis v. Blue Earth Co., 81 Minn. 55; Scioto v. Jerky, Wright, Ohio, 493; Ruhland Co. v. Miller, 16 S. C. 236; McCormack v. Boston, 120 Mass. 499; Detroit v. Railway Co., 184 U. S. 368.

GOODE, J.—A demurrer was sustained to the petition in this case, and the plaintiff having refused to amend and electing to stand on its petition, final judg-

ment was given against it and from that judgment this appeal was taken.

The question for decision is whether the action can be maintained against the Board of Police Commissioners of Kansas City as a body politic, the title of the cause being, "American Fire Alarm Company, a corporation, v. Board of Police Commissioners of Kansas City, Missouri, now Composed of James Cowgill, President, John R. Ranson and John Halpin, Commissioners, Defendant." The only defendant named in the title was the Board of Police Commissioners of Kansas City, Missouri, and various allegations of the petition show the intention was to sue that body alone, and to sue it as a corporation.

The first allegation of the first count alleges "the defendant, Board of Police Commissioners of Kansas City, Missouri, is and was at all times mentioned herein, a *quasi*-public corporation created, organized and existing under and by virtue of the statutes of Missouri, said board being composed of three members, two of them appointed by the Governor and confirmed by the State Senate, the third member being the mayor of Kansas City, who, by virtue of his office, is *ex officio* president of said board." The petition then says James Cowgill was the acting mayor of Kansas City at the time the action was begun, and *ex officio* president of the defendant, the Board of Police Commissioners of Kansas City; and that John R. Ranson and John Halpin were at said time the duly appointed, qualified and acting members. The petition says Henry L. Jost was the mayor of Kansas City and, as such, *ex officio* president of defendant board on said 17th day of May and for some time before and after, and Fred A. Lamb, Jr., and James S. Lapsley were at those times the duly appointed, qualified and acting members of the board.

It will not be necessary to set out the petition in full, but only the substance of it. It contains averments regarding the power, on May 17, 1915, of the defendant Board of Police Commissioners of Kansas City, Missouri, under enumerated sections of the Revised Statutes of

1909, to employ, equip and arm a permanent police force for the city; to rent apparatus for police alarms and fire alarms, purchase new or additional equipment or other apparatus as it might deem necessary for executing its duties; and furnish all necessary material for a complete organization and equipment of the police force and police department of the city. It is alleged that on said May 17th, M. E. DeShaffon, acting as the authorized agent of the board, entered into a contract with the plaintiff on behalf of the board for the manufacture by plaintiff and delivery to the defendant at Kansas City of three hundred and fifty police signal boxes for the price of $80 per box. Other allegations state facts to show the authority of DeShaffon to make the contract for the board, and the terms of the contract. Then follow averments of the manufacture and delivery by plaintiff to defendant, pursuant to the contract, of fifty-four of said police alarm boxes, which were accepted by defendant and put into service in the police signal system of the city; that afterwards bills were presented by the plaintiff for said fifty-four boxes, and defendant issued its warrant to pay for forty of them, but refused to pay for the remaining fourteen boxes. The first count of the petition, which contains three counts, asks judgment for $1120, the unpaid contract price of said fourteen boxes.

The second count, after stating the *quasi*-corporate capacity of the board, and who were its members at the date of the filing of the petition, and who on the 17th day of May, 1915, alleges plaintiff sold and delivered to defendant fourteen police signal boxes, of the reasonable value of $1120, which were accepted by defendant and put into use; and that defendant has refused to pay for them and is indebted to the plaintiff in said amount, for which judgment is asked. That is a count in the nature of one in *indebitatus assumpsit*.

The third count, after alleging the facts regarding the membership of the board on the two dates aforesaid, and the terms of the contract as recited in the first count, says plaintiff, relying on the contract and the

good faith of defendant to carry it out, manufactured and delivered to defendant fifty-four boxes, and completed, ready for delivery, with the exception of the wheel numbers, the remaining two hundred and ninety-six boxes. The wheel numbers, according to the petition, were to be furnished by the board, and it is alleged that, although often requested to furnish them, defendant refused to do so; that plaintiff was at all times ready to complete said boxes by putting the wheel numbers on them, and deliver them to defendant according to the contract, and that plaintiff tendered delivery, but defendant renounced and repudiated the contract and refused to carry out its obligations, to the damage of plaintiff in the sum of $24,800, for which judgment is asked. That count seeks recovery for all the boxes, whether delivered or undelivered.

The reason assigned for demurring is that the case purports to be brought against the Board of Police Commissioners as a legal entity, whereas said board is not a legal entity authorized by law to sue and be sued; and further that each count of the petition fails to state facts sufficient to constitute a cause of action.

I. The laws at present in force affecting the Kansas City "Board of Police" as the body is styled in the statutes, are contained in the article comprising the laws applicable to cities of 150,000 and less than 300,000 inhabitants, but the board was established in 1874 by a special act. [Laws 1874, p. 327; 3 R. S. 1909, Chap. 84, Art. XVII, secs. 9765 *et seq.*] The public policy of creating in large cities a system of metropolitan police controlled by a board of police, the members of which were appointed in much the same way, and the expense of the system similarly defrayed, was commenced for St. Louis in 1861. [Laws 1860-61, p. 146; Laws 1899, p. 51; State ex rel. Hawes v. Mason, 153 Mo. 23; 3 R. S. 1909, secs. 9803 *et seq.*; State ex rel. v. Stobie, 194 Mo. 14.] And there is in effect a general statute for the establishment within cities of the first

*State Agency.*

class of a similar body called "Board of Police Commissioners, City of ———." [2 R. S. 1909, sec. 8770.] Those commissioners are to be appointed by the Governor and the expenses of the department paid in the same way as the expense of the police department in Kansas City. [2 R. S. 1909, secs. 8774 *et seq.*] There are similar statutes for cities of the second class wherein, as in the laws affecting the Kansas City Board, the body is designated, but not named a Board of Police, the members to be called "Police Commissioners of the City of ———." [2 R. S. 1909, secs. 9094 et seq.]

The members of the police force of St. Louis and Kansas City are officers of their respective cities and also of the State. [3 R. S. 1909, secs. 9825, 9782; State ex rel. v. St. Louis, 174 Mo. 125; State ex rel. v. Stobie, 194 Mo. 14; State ex rel. v. Kimmel, 256 Mo. 611.] Nevertheless, it has been settled by several decisions of this court that the municipal police officers, including the members of the police boards of the two cities, constitute a part of the measures adopted by the State to preserve peace, and protect the legal rights of persons. [State ex rel. Hawes v. Mason, 153 Mo. 23; State ex rel. Goodnow v. Police Commissioners of Kansas City, 184 Mo. 109, 133; State ex rel. v. Jost, 265 Mo. 51; State ex rel. v. Jost, 269 Mo. 248.] The reasons for that rule of law and the authorities which support it, are set forth fully in the cited cases and need not be repeated; but we remark that the expense of the police systems, including the board of police of the cities, is borne entirely by the municipalities—is paid out of their treasuries. The mode of raising the necessary funds in Kansas City (and the mode in St. Louis is the same), is prescribed in a section of the Revised Statutes, which makes it the duty of the board of police to estimate, at the beginning of each fiscal year, the sum of money that will be needed during the ensuing fiscal year, and certify their estimate to the council or municipal assembly of the city, which body is required to appropriate the amount of the estimate in the first apportionment ordinance of the fiscal

year, and the appropriation is payable out of the next annual revenue of the city. [3 R. S. 1909, sec. 9778.] But though the city carries the expense of the Board of Police and of the police system generally, it does this pursuant to a law of the State, which it has no discretion about obeying. That is, in raising and appropriating funds to support the system the city acts as an agent of the State. [State ex rel. Hawes v. Mason, 153 Mo. 23; State ex rel. v. Jost, 265 Mo. 51.]

The pertinency of the foregoing observations and authorities to the point in hand in the present case, consists in their demonstration that the Board of Police and the police system of Kansas City do not compose a department of the municipal government, and hence the rule that no action will lie against a department of a municipality does not control the question of the liability of the Board of Police or the Police Commissioners of Kansas City to be sued. The health department, water-department, sewer department or any other department or utility of a city, unless expressly made suable by statute, cannot be sued either on a contract or for a tort; and this for the reason that if liability exists, the city itself is the party liable and not the particular department the conduct of which gave rise to the cause of action. Most of the authorities cited in the brief of appellant were disposed of according to that rule; therefore are not in point in the case before us. [1 Thompson on Corporations, sec. 21; Appleton v. Water Commissioners of City of New York, 2 Hill, 432; Swift v. Mayor of New York, 83 N. Y. 528; Gardner v. Board of Health, 10 Selden (N. Y.) 410; Rauh v. Commissioners of Parks, 66 How. Prac. 368; Madden v. Kinney, 116 Wis. 561.]

The manner in which the expense of the police system of Kansas City is defrayed is pertinent, too, for this reason: although the system is a state institution, as the cost of it is paid out of the city treasury, the items of the cost would not be embraced within the statute which requires the State Auditor to "audit, adjust and

settle all claims against the State and payable out of the Treasury,'' (meaning out of the State Treasury). [3 R. S. 1909, sec. 11813.]

The facts and the law affecting plaintiff's demand being as we have stated, the demand can be presented for payment neither to the officials of Kansas City nor to those of the State; but must be presented to the Police Commissioners, and if they refuse payment, plaintiff's recourse by action, if it has any, must be against the Commissioners, either sued in the name of a distinct entity as was done in the present case, or in their individual names, but in their official capacity. The precise question is as to the proper defendant or defendants rather than whether the Board of Police is a *quasi*-corporation.

II. Before taking up the matter of practice, we will notice the contention of defendant that the contract declared on was one the Police Commissioners were without

**Alarm Boxes: Power to Buy.** out power to make, since the statutes authorized ''the renting of apparatus for police alarms,'' a phrase said to imply that such apparatus should not be purchased. [3 R. S. 1909, sec 9778.] But the commissioners were empowered and required to employ a permanent police force for the city and to ''equip and arm'' the force as ''they may deem necessary.'' [R. S. 1909, sec. 9776.] There was the further requirement that ''the cost of station houses, the renting of apparatus for police alarms, fire alarms *or the purchase of new* or additional equipment of arms or other apparatus,'' should be included in the estimate made by the board of the expenditures for a given fiscal year. [Sec. 9778.] The power given to rent apparatus for alarms must be read along with the powers ''to arm and equip'' the police force as the board might deem necessary, and to purchase additional equipment of arms or other apparatus. When thus read it is apparent the power to rent alarm apparatus was not intended to exclude purchases when the latter were deemed nec-

essary.  Probably the renting referred to the use of the telephone system of the city, or other facilities the board could obtain without buying.  In any view, when we regard the broad authority conferred to purchase apparatus and equipment, the authority to rent alarm and fire apparatus is plainly non-exclusive of the right to purchase.

The contract being within the powers of the board, it was valid and there ought to be a remedy to enforce the obligation of it.  We reject the proposition that if the contract was binding, then the only remedy to enforce it is the writ of mandamus, and think that writ will not run on the facts.  The dispute is about whether the Board of Commissioners is bound by a contractual obligation, a question the plaintiff has the right to affirm and which the board may deny for various reasons—for example, that the signal boxes were not in compliance with the specifications of the contract, or have never been delivered or tendered, or have been paid for, or the obligation to take them has been released.  The facts show neither a merely ministerial act for the board to perform, nor an obligation attended with circumstances which leave the board no discretion about performing it.  On the contrary the facts show a controversy regarding the rights and obligations of the respective parties under the contract; a species of controversy lying beyond the scope of a mandamus proceeding.  [19 Am. & Eng. Ency. Law (2 Ed.), p. 742; State ex rel. v. County Court, 39 Mo. 375.]  The cited case is in point.  The County Court of Howard County, acting by legislative authority, had offered a bounty to persons who should volunteer for state military service, and the relator sought by the writ of mandamus to compel payment of the bounty to himself.  The court held he was entitled to payment, but held also that it would not be compelled by mandamus, the right involved being a common law one arising out of a binding contract between the county and the petitioner, for which there was an ordinary legal remedy.

The appropriate proceeding for a claim like the plaintiff's is an action at law wherein either party may demand a jury, and the claim be established, perchance, by the verdict and judgment—a judgment not to be satisfied out of the property of the members of the board; nor perhaps out of the property of the board, if there be any thus owned, but out of the city treasury, and which the city would be bound to pay after it was included in the estimate of expenses made by the Commissioners; and its inclusion therein could be compelled by mandamus. That was the view taken in an action against a county on road warrants wherein it was contended mandamus should have been asked. Replying to the proposition, the Supreme Court of South Dakota said it was clearly untenable, since the county court denied liability, asserting some of the warrants had been paid, and all were illegal; wherefore it was necessary "the rights of the parties should be determined by the judgment of the court in an ordinary action, and not in the first instance by mandamus." [Custer County Bank v. Custer County, 18 S. Dak. 274, 277.]

III. The principal position taken for plaintiff is that as the Board of Police of Kansas City is not a department of the city government, but is an agency or instrumentality of the State, established to assist in maintaining public order and security, the board must

Quasi-Corporation. be treated as a *quasi*-corporation and capable of being sued as a corporation. The petition says the board is a *quasi*-public corporation, a term used to denote private incorporated companies with duties of a public nature, like railway companies, but the meaning is that the board is a public *quasi*-corporation like counties, school districts, etc., when they have not been endowed with full corporate capacity. [1 Beach on Pub. Corp., sec. 3.]

For defendant it is contended the Police Commissioners partake in no degree of the nature and powers of a corporation, and do not constitute one of a perfect or

of a *quasi*-character, but on the contrary are a group of officials, and hence no action will lie against the board as a distinct entity and in a name of its own, or in the names of the members sued in their capacity as officers. Even if the Police Commissioners compose a body corporate, as plaintiff insists, in the absence of a statute giving the body a distinctive name whereby it may sue and be sued, it does not follow, according to authorities we have found, that an action will lie against it by any name a suing plaintiff may choose to adopt for it, nor by any other name or style than the names of its members; nor does it follow, as is contended for the defendant, that if the board is not a corporate body, an action based on a valid contract made by it will not lie against the members in their own names but not in their personal capacity. It is accepted law that when public officers are entrusted with definite powers and duties, and in the course of their duties and acting within their powers, they give rise to legal rights in other persons, especially when such rights grow out of a contract, and no way exists to enforce them except by an action against the officers as such, an action will lie against them. This is a doctrine of the common law and statutes on the subject are mainly declaratory of the common law rule. [Rouse v. Eddy, 18 Johns. (N. Y.) 407; Silver v. Cummings, 7 Wend. 181; The Supervisor of Galway v. Stimson, 4 Hill (N. Y.) 136.] And the successors of the officers who entered into the contract may be sued on it. [Palmer v. Vandenbergh, 3 Wend. 193; Todd v. Birdsall, 1 Cowen, 260.]

IV. The difficulty of defining with precision a *quasi*-corporation has been noticed by both courts and commentators. In an opinion by Justice MILLER of the Supreme Court of the United States, it was said the meaning of the term was not clear; that it was a phrase applied to a body which exercised certain functions of a corporate character, without having been created a corporation by any statute, general or special. [School Dist. v. Ins. Co., 103 U. S.

**Proper Defendant.**

708; and see note to Todd v. Birdsall, 13 Am. Dec. 522, wherein it was said an exact definition was impossible.] In some bodies which have been accorded corporate character in judicial rulings, without having been incorporated by an express act of the Legislature, the dominant fact was a defined territory with power to act and contract through its governing officers, such as counties and school districts. [Commissioners of Hamilton County v. Mighels, 7 Ohio St. 109; People v. School Trustees, 78 Ill. 136.] In other instances groups of persons entrusted with public functions, like overseers of highways, boards of education, etc., have been regarded as *quasi*-bodies politic. [Rouse v. Eddy, 18 Johns, (N. Y.) 407; Conservators of River Tone v. Ash, 10 Barn. & C. 349; Ingersoll on Pub. Corp. secs. 31 to 33, inclusive, and numerous citations.] It is obvious that if the Police Commissioners compose such a body it is one of the latter class.

In no decision examined by us during a long search for precedents have we found a statement of how many or exactly what corporate powers must be exercised by a set of officials to constitute them a body politic, when they are not so denominated by the statute which created them. We quote what was said on the subject in an opinion that was praised by an accurate commentator in the aforesaid note to Todd v. Birdsall for stating "clearly the principles upon which it may be determined in any particular instance that a body is a corporation though not declared to be so." The inquiry related to a levee district organized under the laws of California:

"A corporation, as defined by Section 283 of the Civil Code 'is a creature of the law, having certain powers and duties of a natural person.' Under this broad definition, the levee district has the attributes of a corporation. It is 'a creature of the law, and has certain duties of a natural person.' Through the board of supervisors, who are its managing agents, it may

make contracts, incur debts, employ servants and agents and perform many other acts which pertain to natural persons. It is also endowed with a corporate name, and has perpetual succession. Those are the principal attributes of a corporation, and though the statute does not in terms declare it to be a corporation, it will be sufficient if the intent clearly appears." [13 Am. Dec. 1. c. 524; and also Dean v. Davis, 51 Cal. 406.] The same note gives Bouvier's definition of the term "*quasi*-corporation" as one "applied to those bodies or municipal societies, which, though not vested with the general powers of corporations, *are yet recognized by the statutes or immemorial usage,* as persons or aggregate corporations, with precise duties which may be enforced, and privileges which may be mantained by suits at law." [Bouvier's Dict. title, Quasi-Corporations.] (Italics ours).

Dicta can be found which import that any set of officials invested with power to act as a unit, particularly in taking on contractual obligations, constitute such a corporation; but a close reading will discover often either an age-long usage to treat the body as a *quasi*-corporation or expressions in, or powers granted by, a statute which plainly denote the intent to incorporate. [Rouse et al. as Overseers of the Poor v. Moore et al. as such Overseers, 18 Johnson (N. Y.) 407; Winslow v. the Commissioners of Perquimans County, 64 N. C. 218; Clarissey v. Metropolitan Fire Dept., 1 Sweeney, (N. Y.) 224, 227; Todd v. Birdsall, 1 Cowen (N. Y.) 260; Gross v. Ky. Board of Managers Columbian Exp., 105 Ky. 840; Ingersoll, Quasi Corp. sec. 33.]

In the North Carolina case the only point for decision was as to the proper form of action, the statute for the govermnent of counties having expressly declared them to be bodies politic and suable "in the name of the Board of Commissioners." In Clarissey v. Fire Department (the authority mainly relied on by defendant in this case), we find that in the act creating the

Metropolitan Fire Department it had been given all the powers of a predecessor department, which had been declared "a body politic in fact and in name" and made capable of suing and being sued. The Kentucky case is more in point, but the real question in it was whether the board represented the State in such a way as to render a suit against the board one against the State itself—an inquiry the court answered in the negative by holding the board, in view of its powers, was an independent corporation; a conclusion dissented from by one judge on the ground that "there was nothing in the duties of the board which indicated that it was incorporated, or that it was to transact the business as an incorporated company."

We consider it an extravagant notion that every officer or body of officers vested with power to make contracts to a limited extent which are not binding on them personally, is, by that fact alone, made into a corporation. Such a doctrine would be in effect the investing of public officers with a corporate character regardless of the purpose of the Legislature in the matter. If a power is given to officials which can be exercised only by a corporation, as for example, to hold the title to real property in succession, such a grant may be taken to show a legislative intent to create a corporation *sub modo.* [The Conservators of River Tone v. Ash, 10 Barn. & C. 349.] And from the perplexing decisions on the subject, it seems to us that the most influential circumstance whereby to determine whether or no public officials are *quasi*-corporations is that the law, either by immemorial usage or by the implications to be drawn from relevant enactments, has recognized them as such, without expressly declaring them to be; but many cases speak of a body expressly incorporated as a *quasi*-entity if it is not given the full powers of a municipal corporation.

In this country every corporation, whether of full powers or limited, must now emanate from the Legis-

lature; at any rate when it is of a variety not sanctioned by usage.. Hence, the remark in Rouse v. Moore, supra, that overseers of the poor were town officers coeval with the settlement of the country.

No one will say Police Commissioners are bodies politic by old usage, and nothing can be pointed to in the various acts and statutes relating to the Kansas City Police Commissioners that indicates an intention on the part of the Legislature to erect them into a corporation except a power to make contracts within a small compass—a power not expressly conferred, but to be implied from the authority given to organize and equip the police system. The Commissioners are not authorized to use a seal; they are never spoken of as a corporation and in almost every mention of them are referred to in the plural number, and this has been true from the creation of the board in 1874; they have been given no distinctive name, certainly not the name of the Board of Police Commissioners, which is the name applied to the defendant in the present case. What the statutes say on the subject is, "There is hereby created and established in every such city a board of police to be called the police commissioners of such city." If any name is given to the board in the statute it is found in the expression "to be called the police commissioners"—words, which, far from indicating the intention to create a body politic, simply denote three officers.

Many boards and commissions for public purposes have been established in this State, and the manner in which this has been done and the different powers conferred, suggest that the Legislature has pursued a policy of selection in the matter of incorporating them. Some of them were created corporations with enumerated faculties. This was done in the following instances, and perhaps in others: The Prison Commission, composed of three members, declared a body corporate under the name and style of the "State Prison Board," with the right of suing and being sued, and to use a common seal.

[Laws 1917, p. 157.]   Similar provisions were made regarding the Board of Agriculture (R. S. 1909, sec. 596); and in the case of the Missouri State Horticultural Society (R. S. 1909, sec. 614); in that of the Missouri State Poultry Association (R. S. 1909, sec. 663); in the case of school districts, whether common schools or city districts (R. S. 1909, secs. 10834, 10979); so of special road districts (R. S. 1909, sec. 10577; Amended Laws 1911, p. 370); so with the Industrial Home for Girls (R. S. 1909, sec. 1544); and with drainage districts (R. S. 1909, sec. 5499; Amended Laws 1911, pp. 205 et seq.); and "Public Reservations" (R. S. 1909, sec. 10257); and of townships (R. S. 1909, sec. 11657).

In some instances, without expressly declaring the particular body a corporation, the Legislature has conferred on it the power to sue and be sued, etc., by a certain name: An example is the charity board in some cities, which the statutes say shall be known "as the Charity Board of the City of ————," and have power to sue and be sued (R. S. 1909, sec. 1322).   The various eleemosynary institutions of the State which are managed by boards are given a general power to maintain actions "in the name of the board of managers of such institution" (R. S. 1909, chap. 19, art. VI, sec. 1389). This provision applies to the twelve institutions named in said article.   In addition to that general power to sue in the name of the board of managers, some of the boards are especially authorized to maintain actions for trespass to the property managed by them.   This is true of the State Sanatorium (R. S. 1909, sec. 1462); School for the Blind (R. S. 1909, sec. 1476); School for the Deaf (R. S. 1909, sec. 1493); Missouri Training School for Boys (R. S. 1909, sec. 1537), and the Industrial Home for Negro Girls, the board of which possesses the power by virtue of a section making the laws applied to the other institutions apply to that one (R. S. 1909, sec. 1569.)   The Public Service Commission of the State of Missouri is accorded the right to sue and to be sued, and to have a seal.   (Laws 1913, p. 564).

But there are other boards and commissions which the Legislature has neither created corporations, nor declared capable of suing or being sued by a certain name, viz: State Board of Dental Examiners (R. S. 1909, sec. 5485); State Board of Health (R. S. 1909, secs. 6651 et seq.); County Boards of Health (R. S. 1909, secs. 6663 et seq); Barbers Board of Examiners, which is authorized to use a seal (R. S. 1909, sec. 1186); State Board of Education (R. S. 1909, chap. 106, art. 11); Banking Department (R. S. 1909, chap. 12, art. 1); State Board of Charities (R. S. 1909, chap. 19, art. 1); Board of County Visitors (R. S. 1909, secs. 1329 et seq.); State Board of Mediation and Arbitration (R. S. 1909, chap. 67, art. 3; Board of Pharmacy (R. S. 1909, chap. 42); Tax Commission—given a seal (Laws 1917, p. 542); State Board of Equalization (R. S. 1909, chap. 117, art. 4); County Boards of Equalization (R. S. 1909, chap. 117, art. 3); Boards of Police.

The title to whatever property may be acquired by the action of the Police Commissioners of Kansas City, does not appear to be vested in them as a body corporate, although they have the care and custody of it.

Another fact worthy of notice is that both the St. Louis and Kansas City Police Commissioners have sued and been sued often, and always by their individual names, but as a board. [Francis v. Blair, 89 Mo. 291; State ex rel. Hawes v. Moore, 153 Mo. 23; State ex rel. v. Jost, 265 Mo. 54; State ex rel. Campbell v. Police Commissioners, 14 Mo. App. 297; and there are other cases.] As most of said proceedings were extraordinary and where mandates were sought to compel the commissioners to do certain things, perhaps it was proper to name them as parties, even if the boards were *quasi*-corporations. But when the board was the complaining party, the members composing it were named as relators and not the board as an entity.

A direct authority for the proposition that the Police Commissioners do not constitute a body politic

is the case of Brotherton v. Board of Police Commissioners of Baltimore, 49 Md. 495, wherein said board was sued as the board is·in the case at bar, and a demurrer was filed to the declaration. The Supreme Court of Maryland held the Baltimore board was an official body created by the State for the purpose of admininstering police duty in the City of Baltimore, but that it did not exist as a body corporate. In that case the Legislature had endowed the board with a common seal, but had not given it other corporate faculties. For the reasons we have set forth we hold the same way in respect of the Kansas City Commissioners.

In a New York case where officers and collective bodies not strictly corporations, but invested with some corporate powers, were conceded the right to sue in respect of matters committed to their charge, it was held the suit must be in the name of the officers and not in the name of the office, with the addition of the title of the office to show the capacity in which the defendant was sued. [Galway v. Stimson, 4 Hill, (N. Y.) 136.] In that case the officer was not named as plaintiff and the court said it had met with no precedent for such an action. There was a statute which prescribed the procedure, but the opinion appears to have treated the rule as one existing independently of the statute. Be that as it may, our conclusion is that, though the Board of Police in the matter of contracting for certain purposes, acts as an aggregate body and to that extent *quasi,* or *as if* it were a corporation, yet not having been endowed with a name or other corporate attributes, actions against the board should be instituted in the names of the members and in their official character.

The names of the Police Commissioners are mentioned in the petition both in the title and in the body, but not by way of making them parties, and said mention cannot be accepted as sufficient to make them parties and authorize them to be served with process, as they must be if parties. -The board is treated as an entity

and as a single defendant, and therefore service of process on the three members was not necessary, but only on the chief officer. [Cloud v. Inhabitants of Pierce City, 86 Mo. 357.]

V. The proposition that the Commissioners in so far represent the State that a suit against them is in
**Ultimate Liability.** effect one against the State, has not been presented nor considered; and we will only remark that the ultimate liability on the contract declared on is the city's liability, not the State's.

The judgment is affirmed. All concur.