[Civ. No. 27693. Second Dist., Div. Four. April 14, 1964.]

HARRY RUBIN et al., Plaintiffs and Respondents, v. C. E. TOBERMAN et al., Defendants and Appellants.

R. D. Sweeney, Cameron W. Cecil and Henry F. Walker for Defendants and Appellants.

Julius A. Leetham for Plaintiffs and Respondents.

KINGSLEY, J.—This is an appeal by defendants, C. E. Toberman and Josephine W. Toberman, from a judgment granting declaratory relief to plaintiffs, Harry and Sophie Rubin.[1]

---

[1]The complaint contained two counts, declaratory relief or, in he alternative, rescission. At the conclusion of the trial, the court stated that the evidence was sufficient to sustain a judgment either for declaratory relief or rescission. Plaintiffs elected to take declaratory relief.

■ A résumé of the facts necessary for a disposition of the issues on appeal may be summarized as follows: In September of 1961, plaintiffs purchased from defendants a vacant hillside lot in the Hollywood Hills section of the City of Los Angeles. Plaintiffs were first shown this particular lot sometime in August of 1961, by a Mr. Kummer who was a real estate salesman for the C. E. Toberman Co. After this initial meeting with Mr. Kummer, plaintiffs met with Mr. Toberman at the lot site. At this time, discussion was had with regard to the fill condition of the lot. Plaintiffs, upon being informed by Mr. Toberman that the lot contained fill, indicated that they would not purchase the lot unless they would receive some assurance in writing from Mr. Toberman with regard to the cost of constructing a foundation upon the property that would support a house. At this time plaintiffs told Mr. Toberman that their financial condition did not allow them to expend more than $1,000 for such purposes. Mr. Toberman, at this time, refused to obligate himself with any such assurances. Plaintiffs then declined to proceed any further with negotiations for the purchase of the lot. However, several days later plaintiffs were contacted by Mr. Kummer relative to the sale of the lot in question. On August 20, 1961, plaintiffs went to the real estate office where they saw Mr. Kummer. Plaintiffs told him they had talked to Mr. Toberman about pilings and costs of caissons. Mr. Kummer informed plaintiffs that he knew nothing about it, and requested plaintiffs to write on a piece of paper exactly what they had agreed to. Mr. Kummer then telephoned Mr. Toberman at home and read the language of the agreement formulated by plaintiffs. Mr. Toberman indicated that he would agree to assurance on his part. Plaintiffs then deposited $500 and signed a deposit receipt which incorporated the agreement read by Mr. Kummer to Mr. Toberman. The agreement provided:

"3. It is agreed that any costs in excess of $1000 required by the building authorities for piers, retaining walls, or special drainage, or retention features other than that required to normally drain and retain the flat surface and building area to Chelan Way will be paid by the seller on presentation of a bill at the time the work is completed."

The subsequent escrow instructions incorporated the above quoted portion of the deposit receipt, and provided for a letter from the sellers containing such an agreement. Eventu-

ally plaintiffs received a letter from Mr. Toberman, dated September 11, 1961, containing such agreement.[2]

In due course the plaintiffs engaged the services of Mr. Kappe, a licensed architect, to design a house for them. Mr. Kappe prepared a scale model of the house proposed to be built by the plaintiffs together with the floor plans for such house. The plaintiffs then took the scale model and floor plans for the house to Mr. Toberman's office. Mr. Toberman indicated that the model house and floor plans were very nice, and plaintiffs could proceed. Plans and specifications were then submitted to the Department of Building and Safety of the City of Los Angeles for purposes of obtaining a permit for the construction of this proposed house. An investigation of the property was made by the department; and the investigation disclosed that there was cracking which evidenced soil instability. The department informed plaintiffs of this fact, and advised them that, before any permit would be issued, a soil check had to be obtained. Plaintiffs proceeded to engage the services of Western Laboratories to run a soil check on the lot. A check of the property was made by Western Laboratories and a report of its findings was sent to the department. The department then sent the following letter, dated May 31, 1962, to plaintiffs:

"Mr. Harry Rubin
3823 Don Tomaso Drive
Los Angeles 8, California

"RE: 7220 Chelan Way (Tract 20606, Lots 17 & 16)

"The existence of cracking in the earth on your lot revealed in our recent meeting, has caused the Department to reach the following conclusions as regards the construction of your proposed dwelling:

"1. The soil report submitted by Western Laboratories adequately covers the design of the residence.

---

[2]The letter agreement of September 11, 1961, reads in part as follows:

"In accordance with agreement contained in deposit receipt dated August 20, 1961, relating to the purchase by you of the above referred to property, we are writing to confirm that we agree to reimburse you for any expenses you may incur in excess of $1,000.00 in meeting the requirements of building authorities for piers, retaining walls, or special drainage, or retention features other than required to normally drain and retain the flat surface and the building area to Chelan Way. Reimbursement will be made to you upon presentation of a bill for the work at the time it is completed, with original statements to support your claim.

"This agreement is not transferable to any subsequent owner."

"2. The soil report does not specify an acceptable means of supporting the rear part of the lot which shows signs of instability as indicated by the surface cracks.

"It will be necessary to secure an additional report from a recognized soils laboratory. This report must include an acceptable method for supporting the rear portion of your property. Field inspection indicates that unless this work is done, it is highly probable that your yard will be subject to landslide at some future date.

"J. C. MONNING
Superintendent of Building

"W. E. Milburn
W. E. MILBURN
Chief of Grading Division

"WEM :lm
"cc: Western Laboratories."

The plaintiffs, finding that expenses in the nature of architectural fees, soil reports, and structural engineering costs were beginning to mount up, felt it their duty to apprise the defendants of this fact because of the defendants' written guaranty. By a reply letter, dated June 14, 1962, Mr. Toberman stated: "This will acknowledge receipt of your letter dated June 13, wherein you list certain items of expense that you have incurred to date, which, in many respects have been needless, and to a great extent have no relationship to the deal we made with you regarding the foundation to support your dwelling." Plaintiffs now being confused over rights, duties and obligations of the parties under the written contract they had with defendants, brought suit in the Superior Court of Los Angeles County asking in the first count for declaratory relief, and in a second and alternative count for rescission of the sale transaction. Judgment was in plaintiffs' favor, and they elected to take declaratory relief.

The court was of the opinion that the contract here involved was one for the support of the lot as well as the house itself. Without reviewing the evidence in detail it will suffice to say that there is abundant evidence to support this interpretation of the contract. ▮ This being a reasonable interpretation of the contract, supported by sufficient evidence, this court is not at liberty to substitute its judgment for that

of the trier of fact.[3] (3 Witkin, Cal. Procedure, Appeal, § 89, p. 2253.)

## I

While defendants did not interpose a demurrer to plaintiffs' complaint, in their answer, as a defense, they contended that the present action for declaratory relief is premature, in that it seeks an advisory opinion only. On appeal defendants once again urge the contention that plaintiffs' declaratory relief action is premature in that there is no justiciable controversy; and that which here was sought and granted constitutes but an "advisory" determination which is not the proper function or province of declaratory relief. We find this argument, as did the trial court, completely unpersuasive.

"A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court." (*Maguire* v. *Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062]; Code Civ. Proc., § 1060.)

In their complaint, plaintiffs have alleged the written agreement between themselves and defendants dated September 11, 1961, where defendants agreed to indemnify plaintiffs for certain costs incurred by them in building their house. The complaint also alleges plaintiffs' letter dated June 13, 1961, whereby plaintiffs notified defendants that they had incurred certain costs and defendants' reply letter whereby defendants ". . . apparently deny responsibility for a part or all of the obligations involved in the premises." The complaint further alleges "that an actual controversy has now arisen in the premises and plaintiffs respectfully pray that a declaration of rights, duties, and obligations be made as to the undertakings of the private parties given mutually to one another."

As seen from the foregoing, plaintiffs have set forth the written instrument upon which they base their claim, and a denial by defendants of liability under plaintiffs' construction of the agreement. The complaint clearly shows that

---

[3]In addition to the evidence in the record, the references in the contractual documents to "retaining walls" and to retaining both the "flat surface" and the "building area," indicate that the trial court's construction of the scope of the defendants' promise was not unreasonable.

there is an actual controversy relating to the legal rights and duties of the respective parties, and as such was sufficient to state a cause of action for declaratory relief within the letter and spirit of section 1060 of the Code of Civil Procedure.

Plaintiffs' property is subject to certain conditions and restrictions, including one that no building shall be erected, placed, or altered until the building plans, specifications and plot plan showing the location of such building had been approved in writing by the Hollywood Commerical Buildings, Inc., its successors or assigns. It appears that defendants are the successors in interest to the above mentioned corporation. The purpose of this covenant was to guarantee that houses being built would be in harmony and conformity with other structures in the tract.

Defendants contend that there is no evidence that any plans and specifications or any plot plan have ever been presented to them for their written approval as required by the restrictions and conditions and that, therefore, plaintiffs' action was premature since there are no formal plans to which defendants can give their approval and as such it cannot be determined what their respective liability would be under their agreement.

This argument, as does defendants' entire position in this court, misconceives the purpose of actions in declaratory relief. ■ Declaratory relief exists to enable a party to a contract to determine his rights and liabilities before he has incurred costs, and subjected himself to risks, which, if his view of those rights and liabilities is in error, he would not have incurred or to which he would not have subjected himself. ■ In the present case, plaintiffs could not intelligently proceed with final plans and specifications until they first determined whether or not the design contemplated would meet the requirements of the municipal authorities and whether or not, if those requirements involved costs for support of the house and lot in excess of $1,000, defendants were obligated to assume the excess costs. The first of these pieces of information is available, as a matter of right, from the municipal authorities; quite properly, the court in this action, by its judgment, has advised the plaintiffs that they may (within the limits set by the judgment) proceed to design a house and lot plan that will satisfy those governmental requirements.

■ We do not construe the final sentence of Finding No.

V[4] as relieving plaintiffs, when they and their architects and other expert advisors have finally decided on specific plans, specifications and plot plan, from submitting them to defendants for approval as required by their deed, although such approval, of course, could not arbitrarily be withheld.

It is to be noted that the trial court, in its judgment, restricted the expenses to be met by defendants to those *"required* to comply with the approved plan and permit of the building authorities" (italics added) and that, by paragraph 2 of the judgment, the trial court expressly provided that it "will retain supervisory jurisdiction should controversies arise over the execution of this judgment." Should defendants feel that the final plans and specifications, when presented to them for approval, involve features and costs beyond those required by the municipal authorities, there is thus provided for them an expeditious method of resolving that problem and of insuring that plaintiffs do not unnecessarily incorporate features for which defendants should not equitably be held liable.

Defendants also argue that the present action is premature since plaintiffs may never build a house, or may build one which does not involve costs within the contemplation of defendants' covenant in excess of $1,000. The argument fails for the same reasons already discussed. The judgment as entered expressly restricts defendants' obligation to payment "upon the submission by plaintiffs to said defendants of receipted bills"; it does not call for the defendants to pay any sum of money to plaintiffs at this time. All that the judgment declares is "That the defendants C. E. Toberman and Josephine W. Toberman are and will be liable for all expenses, including structural design engineering, soil reports, and construction activities, including the placement of piers and caissons and of retaining walls for soil stablilization upon plaintiff's [*sic*] realty lot, ... in all amounts in excess of $1,000.00 which the same requires, but not in excess of $20,000.00,[5] said sums to be payable upon the submission by

---

[4] "In addition, the plaintiffs submitted to the defendant C. E. Toberman a model and plan for preliminary approval by defendants, in line with the covenant on [*sic*] the subject Deed, and the said defendant C. E. Toberman indicated his approval of the same."

[5] ▮▮ The crux of this lawsuit is whether defendants' agreement with plaintiffs pertained only to foundational support for the house alone, or also encompassed foundational support for the lot as well. The court, upon substantial evidence, found that the agreement covered both the house and lot. However, as the contract seems to impose unlimited

plaintiffs to said defendants of receipted bills, which said expenses shall be the expenses required to comply with the approved plan and permit of the building authorities.''

Had the judgment, at this time, called for defendants to pay to plaintiffs a certain sum of money, then the defendants would be correct in their contention. Since the court did not have any plans or specifications before it, its ordering defendants to pay a sum certain to plaintiffs would be based upon a hypothetical situation which in turn would be conjectural and speculative. However, as the judgment now stands it determines the rights and liabilities of the parties respective to their September 11, 1961, agreement. Defendants are under no obligation to pay plaintiffs any sum of money at this time, nor ever unless and until there have been presented to them receipted bills for expenses of the nature prescribed by the judgment. As above pointed out, any dispute at that time may be quickly decided by resort to the court's reserved supervisory powers.

II

Defendants also contend that, because one of the findings of fact is couched in uncertain language, a reversal of the judgment is made mandatory. As will be pointed out hereinafter, defendants' conclusion that a reversal of the judgment is mandatory is erroneous.

Plaintiffs' finding of fact XIII states: ''That the allegations contained in the answer not in accord with or contrary to the findings found in the preceding Findings of Fact are untrue.'' Defendants' are correct in their contention that this is an incorrect method of phrasing a finding of fact, since it cannot be determined which allegations in the answer the trial court believed to be contrary to, or inconsistent with, the previous findings of fact. (See *Kaiser* v. *Mansfield* (1956) 141 Cal.App.2d 428, 433 [297 P.2d 98]; 2 Witkin, Cal. Procedure, Trial, § 115, p. 1847.) Where

liability upon defendants, the court by using the $20,000 limit has read into the contract a factor of reasonableness. We can find no error with the construction of the contract in this regard. The figure of $20,000 is based upon the testimony of a Mr. Milburn, who is the chief of the grading division for the department of building and safety, that the outside limit for stabilization of the soil condition on plaintiffs' lot would be approximately $20,000. If there is error in imposing an upper limit on what appears prima facie to be a potentially unlimited liability, the error is in favor of appellants and therefore one of which they cannot complain. (3 Witkin, Cal. Procedure, Appeal, § 71, pp. 2227-2228.)

a finding is fatally uncertain, as finding XIII is here, such is equivalent to a failure to find. (*Estate of Ramsey* (1951) 107 Cal.App.2d 372 [237 P.2d 20].) However, such an improper and ineffective finding does not *ipso facto* always demand a reversal of the judgment. So long as specific findings are actually made which will support the judgment, a defective or omitted finding cannot be prejudicial. (*Schaefer* v. *Berinstein* (1960) 180 Cal.App.2d 107, 124 [4 Cal.Rptr. 236]; *Brown* v. *Schroeder* (1927) 88 Cal.App. 192 [263 P. 325].) Such is the case here. The findings of fact adequately support the judgment for declaratory relief. Here, unlike the cases cited by defendants where a failure to make a finding resulted in a reversal, there were no material findings lacking that were necessary to support the judgment rendered.

### III

 Defendants complain that, in finding of fact number IV, the court has misquoted the contract of September 11, 1961, by including language which does not appear therein. Finding of fact IV reads as follows:

"That concurrent with the sale of realty, hereinbefore described, which occurred on September 27, 1961, the defendant Sellers gave to the plaintiff Buyers a warranty in the following form *and substance*:

" 'In accordance with agreement contained in deposit receipt dated August 20, 1961 relating to the purchase by you of the above referred to property, we are writing to confirm that we agree to reimburse you for any expenses you may incur in excess of $1,000.00 in meeting the requirements of building authorities for piers, retaining walls, or special drainage, *or retention walls, or special drainage,* or retention features other than required to normally drain and retain the flat surface and the building area to Chelan Way. Reimbursement will be made to you upon presentation of a bill for the work at the time it is completed, with original statements to support your claim. This agreement is not transferable to any subsequent owner.'

"That the plaintiff Buyers would not have purchased the subject realty, except for the warranty and guaranty hereinbefore set out." (Italics added.)

Defendants argue that the italicized portions in the quotation do not appear in the September 11, 1961, letter agreement. However, a careful reading of this finding shows that

it does not purport to quote the letter agreement. It only purports to give "the form and substance" of the agreement. This interpretation of the contract by the court is unquestionably supported by the evidence. We find no error.

## IV

Defendants further contend that the court has incorrectly designated this agreement as a "warranty" and "guaranty" because principles of warranty and guaranty have no application to the facts of the present case. This contention is a mere quibbling with words. The word "guaranty" does not always impart a contract of guaranty. The word is often used in its vernacular sense of promise or agree, imparting an original obligation on the part of the person executing such an agreement. (*Jones* v. *Wilton* (1938) 10 Cal.2d 493, 497 [75 P.2d 593]; *Yankelewitch* v. *Beach* (1931) 115 Cal.App. 629 [2 P.2d 498]; *Ackley* v. *Prime* (1929) 99 Cal.App. 534 [278 P. 932]; *Meyer* v. *Moore* (1925) 72 Cal.App. 367 [237 P. 550].) The same may also be said for the use of the word "warranty." Its use here is not in the formal sense as the term is applied to the law of sales, but rather carries with it the more lay and colloquial meaning of guaranty or indemnify.

We have examined the other contentions raised by defendants and found them to be without merit.

The judgment appealed from is affirmed.

Burke, P. J., and Jefferson, J., concurred.