The **BOARD OF TRUSTEES OF NORTH KANSAS CITY MEMORIAL HOSPITAL, Respondent,**

v.

**Lois J. CONWAY, Appellant.**

**No. WD 34759.**

Missouri Court of Appeals,
Western District.

June 5, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied July 31, 1984.

Application to Transfer Denied Sept. 11, 1984.

Joseph Y. DeCuyper and Donnie R. Davis, Kansas City, for appellant.

Alan B. Gallas, Kansas City, for respondent.

Before PRITCHARD, P.J., and SOMERVILLE and KENNEDY, JJ.

KENNEDY, Judge.

Plaintiff North Kansas City Memorial Hospital had a verdict and judgment

against Lois J. Conway for hospital services furnished to defendant Conway's husband. Defendant appeals, alleging several instances of trial error.

We affirm the judgment.

The facts are that Richard Conway was admitted to the plaintiff hospital via the emergency room on June 12, 1978, after 10 o'clock p.m. He was brought there by ambulance, Mrs. Conway following. In connection with Mr. Conway's admittance to the hospital, Mrs. Conway signed a document entitled, "Guarantee of Account". The document is set out in full in the margin.[1]

Mr. Conway was in the hospital until he died on September 20, a period of 99 days.

Mr. Conway had Blue Cross-Blue Shield medical insurance, but it fell far short of covering the entire hospital bill. The total hospital bill was $51,495.75. Blue Cross and Blue Shield had paid $6,686.04 and Mrs. Conway had made a payment of $2,800, leaving an unpaid principal balance of $42,009.71.

Other facts will appear in the discussion of various points presented by appellant.

## I

Appellant says that she as a matter of law was not a primary obligor of the hospital bill but a guarantor—or, in the alternative, that whether she was a primary obligor or a secondary obligor was a disputed question upon the evidence and that the question should have been submitted to the jury. From that premise she argues that plaintiff's verdict-directing instruction,[2] which submitted plaintiff's case against the defendant as a principal debtor rather than as a guarantor, was erroneous;[3] and also that the hospital's failure to present its claim against Mr. Conway's estate (which, according to Mrs. Conway's hypothesis was the principal or primary debtor), thereby barring its claim against his estate, § 473.-360, RSMo Cum.Supp.1983, barred the hospital's claim against her.[4]

The parties have briefed and argued the case as if the suit were brought upon the written contract, and they have focused on the construction to be placed upon the document entitled "Guarantee of Account". We shall deal with the case on that theory, although it seems to us that the theory of the hospital's lawsuit was quantum meruit and that the "Guarantee of Account" document was simply evidence of the fact, to be considered along with all the evidence, that Mrs. Conway had herself requested the services to Mr. Conway, and that she expected to pay for them. It would follow that when Mrs. Conway's "request" for the hospital services was hypothesized in the

---

1. GUARANTEE OF ACCOUNT

1.  I will deposit $_____ on admission and pay balance on dismissal.

2.  X X X I have Blue Cross and Blue Shield. I will pay any unpaid balance on dismissal.

3.  _____ I have other insurance. I will pay any unpaid balance on dismissal. My insurance will be assigned to NORTH KANSAS CITY MEMORIAL HOSPITAL.

4.  _____ I wish to discuss other arrangements. I will be in at _____o'clock on _____, 19__

    (I agree to be responsible for hospital services rendered to this patient.)
    (I have read this statement and understand it fully.)

/s/ Lois J. Conway       Wife        06-13-78
      Signed      · Relationship to Patient  Date

2. Plaintiff's verdict-directing instruction reads as follows:

"Your verdict must be for plaintiff in [sic] you believe:

"First, at defendant's request plaintiff furnished to Richard M. Conway, hospital services, between June 13, 1978 and September 20, 1978.

"Second, plaintiff charged a total of $42,-009.71 for such goods, and

"Third, plaintiff's charges were reasonable."

3. Citing *Beauchamp v. North American Savings Association,* 543 S.W.2d 536 (Mo.App.1976).

4. Citing *Auchanpaugh v. Schmidt,* 70 Iowa 642, 27 N.W. 805 (1886); *First National Bank, Shenandoah v. Drake,* 185 Iowa 879, 171 N.W. 115 (1919).

verdict-directing instruction, that the jury could consider the purport of the document and that the instruction did not in fact assume (as Mrs. Conway complains it does) that it was as a matter of law a primary obligation. See *Service Construction Company v. Nichols*, 378 S.W.2d 283, 288 (Mo.App.1964).

Viewing it as a suit upon the *contract*, though, as the parties have done, it is our conclusion that there was no ambiguity about the document that Mrs. Conway signed. It was as a matter of law an unambiguous, unqualified promise by her to pay for the hospital services rendered to Mr. Conway. Mrs. Conway says that the use of the word "Guarantee" introduces an ambiguity into the document. We think not. The word "Guarantee" is quite frequently used in common parlance to mean "promise", and that was its meaning here. *Rubin v. Toberman*, 226 Cal.App.2d 319, 38 Cal.Rptr. 32, 39 (Cal.Dist.Ct.App.1964). This instrument is written in the language of the street (note the use of "be responsible for"). Its meaning is unmistakable when it says: "I will pay any unpaid balance on dismissal"... "I agree to be responsible for hospital services rendered to this patient."

■ In a further attempt to show that she was a guarantor rather than a principal debtor, Mrs. Conway calls our attention to a second hospital record, the "registration form", which contains information about Mr. Conway—his birth date, for instance, his occupation, his religion, his spouse, and the like. On that form, in a space for "person responsible for this account", is written the name of "Richard Conway". There is no evidence of the circumstances under which this form was completed, or when, but it was doubtless at or near the time of his admission to the hospital. Mrs. Conway's signature does not appear upon this document. There is no evidence that she ever saw it. It has nothing to do with the "Guarantee of Account" and does not make it ambiguous. Even if Mrs. Conway had seen and signed the registration form, though, the fact that Mr. Conway was "re-sponsible for this account" does not prevent Mrs. Conway's also being primarily liable therefor as a co-obligor.

■ Mrs. Conway makes one other argument directed at the question whether the document evidenced a primary or secondary obligation on her part. That argument is that the original petition of the plaintiff was entitled "Petition on Guaranty" and it alleged that defendant "executed a written guaranty of said account whereby said defendant agreed to personally guaranty and to pay any unpaid balance upon said account". A copy of the guaranty was attached to the original petition. This petition was introduced into evidence as an "admission against interest" of the plaintiff hospital. (The original petition was amended to state a claim upon account, alleging that the hospital services to Mr. Conway were rendered at "Lois J. Conway's special instance and request", and it was upon that theory that the case was submitted to the jury.) Defendant does not argue that plaintiff hospital made some kind of binding election by its original petition and was somehow foreclosed by the theory of its original petition. She does not explain what *facts* were admitted in the original petition which contradict or were inconsistent with the evidence adduced at the trial. Plaintiff admitted no *fact* in the original petition which aids defendant. Plaintiff could not thereby "admit" a legal proposition, *Macheca v. Fowler*, 412 S.W.2d 462, 465 (Mo.1967); *Kelso v. C.B.K. Agronomics, Inc.*, 510 S.W.2d 709, 728 (Mo.App. 1974).

■ Since as a matter of law the defendant's contract established, as we hold, a primary obligation to pay for the hospital services, it follows that the verdict-directing instruction was not in error, and it follows also that the hospital's claim against Mrs. Conway was not barred by its failure to make its claim against Mr. Conway's estate.

II

Defendant next says that the "Board of Trustees of North Kansas City Memorial

Hospital" is not a legal entity and that it has no capacity to sue. She says that the suit should have been brought by the city, and that the hospital is not an entity separate from the city but is merely an arm of the city.

Defendant correctly points out that the statutes relative to hospitals of the character of the North Kansas City Memorial Hospital do not expressly give to the hospital or to its governing board of trustees the authority to sue and be sued. §§ 96.150–96.228, RSMo 1978, and Cum.Supp.1983. 96.150.

■ It is not necessary, however, in order for a public agency such as the hospital to have the capacity to sue and to be sued, that it have express statutory authority therefor. What is necessary is that it be a separate, an independent, legal entity, having the attributes of a corporation. Such an organization by necessary implication has the right to sue and be sued. *Parker v. Unemployment Compensation Commission*, 358 Mo. 365, 214 S.W.2d 529 (1948). A public hospital, under the auspices of a city, for example, or of a county, might be called a "quasi-artificial person". *See Parker v. Unemployment Compensation Commission*, supra; see generally 67A C.J.S. Parties § 9 (1978).

Defendant says that the plaintiff hospital Board of Trustees is not such an entity with capacity to sue. She cites *Board of Public Works v. Sho-Me Power Corporation*, 244 S.W.2d 55 (Mo. banc 1951), where the court held that the Board of Public Works of the City of Rolla, authorized by § 91.450 et seq., RSMo 1949, was not a legal entity and did not have capacity to sue.

The status of the Board of Public Works in that case furnishes a good contrast to the status of the hospital in the present case. The Board of Public Works was clearly, as it was described in the enabling statute itself, Section 91.450, an "executive department" of the city. It was created by ordinance of the city, under a power given by statute. The board's powers were subject to abridgement or enlargement by ordi-

nance. All its contracts were subject to the approval of the city council by mandate of the statute, Section 91.530.

■ Contrast the situation of the Board of Public Works in the Rolla case with the situation of the Board of Trustees of the hospital in this case. The hospital is not a creation of the city. It comes into being by vote of the voters of the city and it is thereafter subject to no control by the city. The statute itself authorizes the Board of Trustees to enter into various kinds of contracts, § 96.190, RSMo 1978, and to hold title to real estate, § 96.210, RSMo 1978. The city may not abridge or enlarge its powers. *See American Fire Alarm Co. v. Board of Police Commissioners of Kansas City*, 285 Mo. 581, 227 S.W. 114, 119 (1920). The whole statutory scheme contemplates an autonomous operation. The right to sue in its own name is an implied adjunctive to such powers. *See Parker v. Unemployment Compensation Commission*, 214 S.W.2d at 532.

### III

Appellant's other points may be quickly disposed of.

■ She says that there was no proof of the reasonableness of the hospital charges. This argument is based upon the alleged lack of qualifications of Mrs. Young to express an expert opinion upon the reasonableness of the charges. Mrs. Young was supervisor of credit and collection at the hospital. Her experience and her training, to which she testified, fully qualified her to express her opinion of the reasonableness of the charges. Mr. Cashner, business manager for St. Joseph Hospital, was also qualified to express his opinion that the charges were reasonable. The fact that he did not review every item on the 53-page bill, but that his testimony was based on a macro-examination of it, did not disqualify his opinion.

### IV

Appellant says finally that the verdict-directing instruction, which we have copied

into the margin at Note 2 above, was confusing and erroneous in that there was no "and" between paragraphs "First" and "Second", and that paragraph "First" uses "hospital services" and paragraph "Second" uses the words "such goods". The argument may be disallowed without discussion.

Judgment affirmed.

All concur.