THE STATE *ex rel.* LYNN v. THE BOARD OF EDUCA-
     TION OF THE CITY OF ST. LOUIS.

In Banc, July 17, 1897.

1. **School Elections:** PAYMENT OF EXPENSES BY CITY: CONSTITU-
TIONALITY.   The General Assembly has control over the revenues of a city, as well as over those of the counties or of the State, and can direct by law that the expenses of an election for electing school directors in the municipality shall be paid out of the city's treasury from taxes levied and collected by the city authorities; and such a law is not unconstitutional.

2. **School Elections in St. Louis:** PAYMENT OF EXPENSES BY THE
CITY.   The law passed in 1897 for the government of schools in St. Louis, which provides that the election of members of the school board "shall be governed by the same laws, rules and regulations which govern elections for municipal officers in such city," puts upon the city, and not the school board, the obligation to pay the expenses of the judges and clerks at a special election for choosing members of the school board.

3. ———: ———: REPEAL OF ACT OF 1833: LAW OF 1895 IN FORCE.
Until the repeal in specific terms by the law of 1897 of the special act of 1833, which vested the school board with power to provide for the election of its members, the city was under no obligation because of the general election statute of 1895 to pay the expenses of an election for school boards.   But when the act of 1897 repealed this special act of 1833, then the general act of 1895, which declared that "all expenses incurred by said board of election commissioners and all costs of registration and elections in such cities shall be paid out of the city treasury," at once came into force, and after such repeal, even though nothing more had been said, the expenses of a special election for choosing members of the school board must be paid by the city.

*Mandamus.*

PEREMPTORY WRIT DENIED.

*W. C. Marshall* for relator.

(1)   The contention of relator is that neither the whole of the act of 1897, nor section 6 thereof, ever contemplated requiring the city to pay the expense of holding this special election, and that section 6 was intended to insure a fair election, but never had any reference to the question of who was to pay the cost thereof, and that inasmuch as the Constitution and laws of this State authorize a separate taxation for school purposes, the cost of this special election should be paid out of that fund and not out of revenue authorized by the Constitution and laws of Missouri and the charter of the city of St. Louis to be raised for municipal purposes only.   Cooley's Blackstone [3 Rev. Ed.], p. 59; *Smythe v. Fisk*, 23 Wall. 380; *Heydon's* case, 3 Rep. 7b; *Regina v. Most*, L. R. 7 Q. B. D. 251; *State ex rel. v. Miller*, 100 Mo. 439; *State ex rel. v. School Board*, 131 Mo. 505; *State ex rel. v. St. Louis County Court*, 34 Mo. 546; *State ex rel. v. Holladay*, 70 Mo. 137.   (2)   The General Assembly has no power, under the Constitution of Missouri, to require money raised by the city of St. Louis for municipal purposes to be applied to the payment of the expenses of the schools.   *State ex rel. v. Holladay*, 70 Mo. 138; *Hamilton & Treat v. St. Louis County Court*, 15 Mo. 3; *State ex rel. v. St. Louis County Court*, 34 Mo. 546. Section 1 of article X of the Constitution vests the taxing power in the General Assembly for State purposes, and in counties and cities, under authority granted to them by the General Assembly for county and other corporate purposes.

*R. E. Rombauer* for respondents.

(1)   It is the duty of the courts to confine themselves to the words of the legislature, nothing adding

thereto, nothing diminishing.  *Everett v. Wells*, 2 Scott (N. C.), 531; *Green v. Wood*, 7 Q. B. 185; *State v. Hays*, 78 Mo. 600; *Hicks v. Jamison*, 10 Mo. App. 35; *Henry & Coatsworth Co. v. Evans*, 97 Mo. 47; *State v. Wellott*, 54 Mo. App. 310; *Bedsworth v. Bowman*, 104 Mo. 44.   (2)   The case of *Hamilton et al. v. St. Louis Co. Ct.*, 15 Mo. 3; *State ex rel. v. St. Louis Co. Ct.*, 34 Mo. 546; *State ex rel. Brown v. Holladay*, 70 Mo. 137, and *State ex rel. v. Owsley*, 122 Mo. 68, all concede the power of the legislature to appropriate funds raised by taxation for local purposes, for expenses of this character.   In fact all these cases go much farther than it is necessary to go in this case, since in the case at bar the election is for a purely local purpose.   (3)   That the legislature had power to impose the expenses of this election upon the city's general revenue and to make them payable out of the city treasury, can admit of no possible doubt after the full and able discussion of that subject in *State ex rel. v. Owsley*, *supra*.   That it has so imposed them can admit of no doubt under the clear and explicit language of the laws of 1895 and 1897, which admit of no other construction.

ROBINSON, J.—This is a proceeding by *mandamus* to compel the board of education of the city of St. Louis and the members thereof to audit relator's claim for services as one of the clerks at a special election held in the city of St. Louis on the eighteenth day of May, 1897, to select members of said board of education under the act creating said board passed and approved on the twenty-third day of March, 1897, known as The Civic Federation Bill, and to appropriate out of the funds belonging to said board of education sufficient money to pay same.   The relator was regularly appointed as one of the clerks of the election in pre-

cinct number 7, ward 28, of the city of St. Louis, on the twenty-third day of September, 1896, for a term ending sixty days prior to the next general election, pursuant to the provisions of the act approved May 31, 1895, relating to elections. He alleges that as such clerk he served at the election for members of the board of education on the eighteenth of May last, and is entitled to the sum of $15 for such services, which have been properly certified to by the board of election commissioners of the city of St. Louis.

About two thousand, six hundred other clerks and judges in the city of St. Louis are similarly situated. The board of election commissioners for the city of St. Louis, as required by law, held the election on the eighteenth day of May, 1897, and thereafter certified the costs to the respondent and asked it to make the proper and necessary appropriation to pay the same, together with all other costs incurred at said election. The board of education refused to do so on the ground that it was not within its power under the act of '97 creating said board to comply with the request and that such election expenses were subject alone to be audited by the fiscal officers of the city of St. Louis and payable out of the city treasury under the law in force when said expenses were incurred.

To determine whether the expense of this election is to be paid out of the treasury of the board of education or out of the city treasury, this proceeding has been instituted, both the city of St. Louis and the board of education denying the liability. There is no controversy touching any facts. The respondents have entered their appearance and in their return say that the writ is insufficient in law and does not state any cause against respondents or either of them.

The contention of the relator is that inasmuch as the Constitution and laws of this State authorize a

separate taxation for school purposes, the costs of this election should be paid out of the school fund and not out of revenues raised for municipal purposes only, and further that the legislature has no constitutional power to require the city of St. Louis to pay the expenses of this school election. If the last contention is not well made, then the answer to relator's first contention is simply that the legislature has thought proper to provide for the expenses of the election of the board of education of the city of St. Louis out of a fund and by a way not approved by his judgment, if we read aright the act creating the respondent board of education and the election laws of 1895 to which it refers in section 6 thereof.

Just what constitutional provision would be violated, if it is determined that the legislature has provided that the expenses incurred by the election of the directors of the board of education of the city of St. Louis shall be defrayed by the city of St. Louis out of its general revenue, is not named or designated by the relator; but be that it may, the constitutional power of the legislature to authorize by law a tax to be levied by the municipal authorities upon property within its limits to pay the expenses of all elections held therein ought not now to be a question in this State since the ruling of this court in the case of *The State ex rel. v. Owsley*, 122 Mo. 68. In that case this court, construing section 1011, Revised Statutes 1889, containing a similar provision to section 91 of the present election law, upon which respondent relies to throw the costs of this election upon the city, held that the legislature had the constitutional right to require the city to pay the expenses of holding all elections, whether national, state, or municipal, held in such city, out of revenue raised by the city.

VOL. 141 mo—4

The legislature has control over the revenues of the city as over that of the county and State, and can direct by law that the expenses of elections held in a municipality, for the election of school directors, or for local purposes, shall be paid out of the treasury of the municipality from taxes levied and collected by municipal authorities.

If, then, the question as to the constitutional power of the legislature to require the city of St. Louis to pay the expenses of this election out of its treasury, raised but not elaborated by counsel for relator, is disposed of, let us now see if the legislature has so directed the payment of all election expenses held within the limits of the city out of its treasury as contended by respondent. By section 6 of the act of March 23, 1897, page 223, creating the respondent board, and in pursuance of which the election in question was held, we find this provision: "Within 60 days after the taking effect of this act, or the same becomes applicable to such city, there shall be held in every such city a special election at which twelve members of such board of education shall be elected . . . . . . Such special election . . . . . . shall be held on such day as shall be named by the election commissioners of such city, who shall in due time name such day and perform all duties imposed on them by any law pertaining to election in any such city for municipal officers or members of the house of delegates. Such special election and all elections for members of such board of education shall be subject to and governed by the same laws, rules and regulations which govern elections in such city for municipal officers or members of the house of delegates, including the law pertaining to the registration of voters. After such special election there shall be elected at each municipal election, whether for general or municipal officers or for members of the house of

State ex rel. v. Board of Education.

delegates, four members of such board of education, who shall assume the duties of their office," etc., etc.

In the act of March 31, 1895, relating to elections in cities having over one hundred thousand inhabitants, creating a board of election commissioners, we find the following provisions:

"SEC. 16.  Said board of election commissioners shall make all necessary rules and regulations, not inconsistent with this act, with reference to the registration of voters and the conduct of elections; and shall have charge of and make provisions for all elections, general, special, local, municipal, state and county, and of all others of every description, to be held in such city, or any part thereof, at any time.

"SEC. 91.  . . . . . . . All expenses incurred by said board of election commissioners; and all costs and expenses of registration and election in such cities shall be paid one half out of the city treasury and one half out of the county treasury, except in cities not within a county, in which cities all shall be paid out of the city treasury, and all printing, binding, etc., shall be let by contract, subject to such regulations as are or may hereafter be prescribed by ordinance of any such city."  Acts 1895, Extra Session, pp. 12 and 42.

It might be here suggested that the city of St. Louis is of the latter class.

As early as 1833 there was incorporated by a special act of the legislature a corporation known as "The Board of President and Directors of the St. Louis Public Schools," having in charge the complete management of the interests of the public schools of that city, and vested with the authority and power to provide for the election of its own members; and the school board has ever exercised that prerogative until the passage of the act touching the elections of school directors in cities of three hundred thousand inhabitants passed

and approved March 23, 1897, in the first section of which the act of 1833 and all amendatory acts thereto were repealed. The contention of respondent now is, that inasmuch as under the old law, the school board having exclusive power to determine the time, mode and manner of holding elections for its members, it was logically bound to provide for the expense thereof, as was done, but that as under the present law the board has nothing to do with the control or management of the election of its directors or of any school elections, hence can not be held for the expenses thereof by implication, and that authority elsewhere than in the act of '97 creating the present board must be invoked to indicate the source of supply from whence the necessary funds are to be provided. While the act of 1897 is silent on the question as to who or what body shall provide for and pay the expenses of all school elections conducted in cities of the population of St. Louis, we find in section 6 thereof this provision: "Such special and all elections of members of such board of education shall be subject to and governed by the same laws, rules and regulations which govern elections in such city for municipal officers or members of the house of delegates, including the law pertaining to the registration of voters," which amounts to an affirmative declaration to the effect that the election of the members of the board of directors as at the present elections, shall stand upon the same footing as those of all municipal officers of the city. And whereas, it is provided by section 91 of the general election laws of 1895, that all expenses incurred by the board of election commissioners and all costs and expenses of registration and elections in said city shall be paid out of the city treasury, it must follow that the city is liable for the expenses of this election. If, however, the act of '97 had been entirely silent as to the duty of the election com-

missioners in the matter of the conduct of this election, their duty under the provisions of the general election law of 1895 would have been none the less mandatory, not only as to what body should control the election, but as to what body should provide the fund out of which the expenses thereof should be paid. The want of a provision in the act of '97 as to who should conduct this and similar elections for school directors and to pay the expense thereof would be as a command to the board not to pay. The board could not pay the expenses of this or any election unless some provision of law could be found requiring them to do so, or unless that duty would necessarily follow from the exercise of other duties and powers imposed upon them by law.

Since after the repeal of the charter of the "board of president and directors of the St. Louis public schools, which was effected in the first section of the act of '97 creating the respondent⁺ board, no corresponding power or authority of conducting and managing the election of its directors was invested in the new board, as in the old, the duty and power of the election commissioners under the election law of '95 to hold this and all other elections in the city at once necessarily attached, and with its action the liability of the city to pay all expenses incident to the same out of the city treasury as provided therein. The facts upon which this court in the case of the *State ex rel. Rutledge et al. v. St Louis School Board*, 131 Mo. 505, decided that the school board had the power to provide the time, place and manner of conducting elections for selecting members of the board (notwithstanding the election law of 1895) no longer exist. There the question was as to the effect of the general election act of 1895 upon the power of the old school board to conduct the election of its own members under the authority

of the special act of 1833 creating that board. This court there held that as the act creating the old school board was a local law, in which the manner of conducting the election of its directors was prescribed, that it was not to be held repealed by the general election act of '95, and that the provisions of the old law on that subject would continue effective. Now since the old act of '33 with all its provisions and amendments has been repealed by the present act of March 23, 1897, it is no longer a question as to whether the provisions of a local law on a given topic or those of a general act on that subject, shall govern. That question was eliminated from this case by the repealing of the local act, by the striking down, as it were, of the very foundation on which rested the decision in the *Rutledge* case. Since nothing but the general election act of '95, at the time of the election in controversy, remained upon the statute affecting the subject of election expenses, and nothing exists to exempt the conduct of this election, with the necessary consequence (the costs to relator) from its provisions, the election law of '95 became applicable, as the only law upon the subject.

Much has been said by the learned counsel for the relator in the brief filed herein as to the canon of construction that should be applied in construing the statutes bearing upon the subject in question. To our mind the elaboration seems unnecessary. The court is not to say what the statutes might or ought to be, by inferences that may be drawn from the nature of the objects dealt with in the face of the clear and unqualified language of the present election act, but to declare the law as it is found, leaving its wisdom and policy to the body that gave it life. Here no doubtful, obscure, ambiguous or technical words or phrases are, in the law, bearing on the subject of elections and the expenses thereof, to be found.

The words in section 6 of the act of '97 creating the board, "all the elections for members of such board of education shall be subject to and governed by the same laws, rules and regulations which govern elections in such city for municipal officers," etc., and the words "all expenses incurred by said board of election commissioners and all costs and expenses of registration and elections in such cities . . . . . . . shall be paid out of the city treasury," etc., found in the election law of '95, are so clear, plain and unambiguous as to admit of but one meaning.

No possible consideration of extraneous facts, no examination into the history of the conduct of the old school board, no inquiry into the mischief intended to be remedied by the enactment of the present law of '97 in lieu of the old act of '33, could serve any purpose in construing words of such clear meaning as those employed in the law fixing the cost of all school elections in cities of the population of St. Louis upon the city. The writ prayed for is denied. All concur, except SHERWOOD, J., who is absent.