STATE OF MISSOURI, at the relation of RUSSELL FIELD ET AL., Board of Police Commissioners of Kansas City, Missouri, Relators, v. BRYCE B. SMITH ET AL.—49 S. W. (2d) 74.

Court en Banc, March 15, 1932.

*Frank Schibsby* for relators; *Henry M. Beardsley* of counsel.

*George Kingsley, Marcy K. Brown, Jr.,* and *Joshua Barbee* for respondents.

RAGLAND, J.—This is an original proceeding commenced in this court by the Police Commissioners of Kansas City to obtain a peremptory writ of mandamus against the City Council of that city to compel the appropriation, under the provisions of Chapter 38, Article XXIII, Revised Statutes 1929, of the sum of $1,442,425, the amount estimated by the relators as the cost of the police department of Kansas City for the fiscal year 1931-2. The return alleges the unconstitutionality of the Statute.

What is now Article XXIII of Chapter 38, Revised Statutes 1929, creates and establishes within every city of the State having a population of 200,000 and less than 500,000 (there is but one, Kansas City) a board of police, and through such board a system of metropolitan police. The system so set up in and for Kansas City is a department of the State Government and not of the municipal government of that city. [American Fire Alarm Co. v. Board of Police Commissioners, 285 Mo. 581, 591, 227 S. W. 114.] The validity of Sections 7513, 7515, 7516, 7524, 7535, found in said Article XXIII, are challenged as delegating legislative powers to an administrative board. Said sections are as follows:

Sec. 7513. "To enable the board to perform the duties imposed upon them, they are hereby authorized and required to employ a permanent police force for the city, which they shall equip and arm as they may deem necessary. [R. S. 1919, sec. 8924.]"

Sec. 7515. "It shall be the duty of the board of police at the beginning of each fiscal year to estimate what sum of money will be necessary for the ensuing fiscal year to enable them to discharge the duties hereby imposed upon or entrusted to them, and they shall forthwith certify the same to the common council or municipal assembly of the city, who are hereby required in the first apportionment ordinance of that fiscal year to set apart and appropriate the amount so required, payable out of the next annual revenue of the city. . . . [R. S. 1919, sec. 8926.]"

Sec. 7516. "The board of police is hereby authorized to make requisition monthly upon the treasurer, comptroller or other proper disbursing officer or officers of the city as it may deem necessary for executing their duties for that month, and the sum so required

shall be appropriated and by said disbursing officer or officers placed to the credit of the police department hereby created, and such money so appropriated shall be paid out of the city treasury only upon warrants drawn by the president of the board and countersigned by the city comptroller as it may be needed to meet the current expenses of the board of police. [R. S. 1919, sec. 8927.]''

Sec. 7524. ''The board may, as the service requires, appoint officers and patrolmen as follows: A chief of police, at a salary of five thousand dollars per annum, and he shall not receive any fees or perquisite; one chief of detectives, at a salary of not less than three thousand dollars or more than forty-two hundred dollars per annum; a secretary of the board at a salary not less than two thousand five hundred or more than three thousand dollars per annum; and an assistant secretary, at an annual salary of not less than eighteen hundred dollars nor more than twenty-five hundred dollars; captains, not to exceed one for each police district except at headquarters, where two captains may be allowed at a salary of three thousand dollars each per annum; lieutenants, not to exceed one for each police district, at a salary of twenty-four hundred dollars each per annum; sergeants, not to exceed four to each police district, at a salary of twenty-one hundred dollars each per annum; secretary of the chief, at a salary not less than eighteen hundred dollars or more than twenty-four hundred dollars per annum; a police surgeon, at a salary of not to exceed twenty-four dollars per annum, to be fixed by the board, and he shall perform such additional duties as may be prescribed by ordinance; detective sergeants, not to exceed one for every fifteen detectives, at a salary of twenty-four hundred each per annum; police detectives, not to exceed one for every twelve patrolmen, at a salary of twenty-one hundred dollars each per annum; patrolmen not to exceed one for every seven hundred inhabitants, the estimate to be taken from the best known source for obtaining such information: *Provided, however,* that for extraordinary emergencies the board may raise such additional force as may be not to exceed fifteen hundred dollars per annum; class c, patrolmen shall be regulated and paid according to the following classes: class a, not to exceed eighteen hundred dollars per annum; class b, not to exceed sixteen hundred and eighty dollars per annum; class c, not to exceed fifteen hundred dollars per annum; class c, patrolmen shall be the probationary patrolmen, and shall serve a period of six months; police matrons, at a salary of not less than twelve hundred dollars nor more than fifteen hundred dollars each per annum; superintendent of police signal system at a salary of twenty-five hundred dollars each year; police signal operators, not to exceed three for each police station at a salary of fifteen hundred dollars, each per annum; property clerks, at a salary not to exceed twenty-four hundred dollars per annum; janitors not to exceed two for each police

station, at a salary of twelve hundred dollars each per annum; turnkeys, not to exceed two for each police station, at a salary of twelve hundred dollars each per annum; chauffeurs, not to exceed two for each police station, at a salary of fifteen hundred dollars each per annum. In addition to the above enumerated police officers, the board of police commissioners shall have the power and authority to appoint a traffic squad and said board shall have the power to determine the number, the grades and the rate of salary, and shall have the power to employ such numbers as they deem necessary from time to time, the salaries of officers and patrolmen of the traffic squad shall not exceed those paid to officers and patrolmen of like grade in the regular force of the department as herein prescribed. [R. S. 1919, sec. 8935, Amended, Laws 1921, p. 478.]''

Sec. 7535. ''The board of police commissioners shall provide itself with a secretary and assistant secretary and such clerks and other help as may be necessary for the transaction of its business, and shall have power to divide the city into police districts and furnish all the necessary materials and provisions for a perfect and complete organization and equipment of the police force and police department of the city, and may, under the direction and control of the board of public works, by and with the consent of the common council, evidenced by ordinance appropriating money therefor, erect in any police district station house, jails and other accommodations for the use of the police department. [R. S. 1919, sec. 8946.]''

The statute in question was enacted in 1919 (Laws 1919, p. 557) and was amended in important particulars in 1921 (Laws 1921, p. 478). It differs in material respects from the statute considered and construed in the case of State ex rel. v. Jost, 265 Mo. 51, 175 S. W. 591, decided in 1915. In neither that case nor the later one of State ex rel. v. Beach, reported in 325 Mo. 175, 28 S. W. (2d) 105, was the constitutional question now presented either raised or considered. With reference to the particular statute here involved the question of the delegation of legislative power is one of first impression. It should be premised that whatever may be said in passing upon that question should not be construed as in any wise going to the constitutional validity of the statutes creating police systems for the city of St. Louis and for cities of the first class operating under general law, because those statutes differ radically from the one now in judgment. It will be time enough to consider their constitutionality or that of either of them when, if ever, it is so challenged in a case before us as to call for our determination.

As stated, the metropolitan police system of Kansas City is a State agency, a department of the State government, created or attempted to be created by the Legislature.

''One of the settled maxims in constitutional law is, that the power conferred upon the Legislature to make laws cannot be dele-

gated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws may be made until the Constitution itself is changed. The power to whose judgment, wisdom and patriotism this high prerogative has been entrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor .can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust." [1 Cooley on Cons. Limitations, 224.]

"The Legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law complete in itself designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations, to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose." [Bailey v. Van Pelt, 78 Fla. 337.]

"The Legislature may, without violating any rule or principle of the Constitution, confer upon an administrative board or officer a large measure of discretion, provided the exercise thereof is guided and controlled by rules prescribed therefor." [People v. Products Co., 195 Cal. 548; see also Ex parte Cavanaugh, 313 Mo. 375, 280 S. W. 15; St. Louis v. Ice & Fuel Co., 317 Mo. 907, 296 S. W. 993; Merchants Exchange v. Knott, 212 Mo. 616, 111 S. W. 565, and cases cited.]

Looking to the challenged sections with the principles just stated in mind, it may be fairly said of them by way of general characterization that, after prescribing merely the nucleus of the personnel of a police force, they confer upon the police commissioners an unlimited authority and an uncontrolled discretion with respect to appointing, organizing, arming and equipping a permanent police force for Kansas City: They specifically empower the commissioners to "equip and arm" a permanent police force "as they may deem necessary," to provide themselves with "such clerks and other help as may be necessary for the transaction of its (the Board's) business," and to "furnish all necessary materials and provisions for a perfect and complete organization and equipment of the police force and the police department of the city." The correctness of the general characterization made will be confirmed by an analysis of some of the specific provisions of the sections. Section 7524 limits captains and lieutenants to one, and sergeants to four, for each police district, but Section 7535 without prescribing any conditions whatever gives the commissioners *carte blanche* to divide the city into as many police districts as they may see fit. Signal operators are limited to three, and janitors, turnkeys and chauffeurs to two, for each police

station.  But there may be just as many police stations as the commissioners in their wisdom—or caprice—may establish.  Police matrons at a salary from twelve to fifteen hundred dollars per year each and property clerks at twenty-four hundred dollars each may be appointed.  But the statute neither limits the number nor prescribes any rule or guide which would serve as a limitation with respect thereto upon the commissioners.  While Section 7524 purports to limit patrolmen to one for every seven hundred inhabitants, it in fact authorizes the appointment of such officers without limit.  Note its concluding language:

"In addition to the above enumerated police officers, the board of police commissioners shall have the power and authority to appoint a traffic squad and said board shall have the power to determine the number, grades and the rate of salary, and shall have the power to employ such numbers as they deem necessary from time to time.  The salaries of officers and patrolmen of the traffic squad shall not exceed those paid to officers and patrolmen of like grade in the regular force of the department as herein prescribed."

Finally, the statute, without prescribing a single condition or limitation, even as to expenditures, gives the police board a blanket power of attorney to arm and equip a police force, to provide itself with "such clerks and other help as may be necessary for the transaction of its business, . . . and furnish all the necessary materials and provisions for a perfect and complete organization and equipment of the police force and police department of the city."

By virtue of Section 7519 the patrolmen constituting a traffic squad are state officers.  The positions filled by them are public offices. The attempted delegation to the board of police of the power to create such offices is clearly void.  [State ex rel. v. Smiley, 304 Mo. 549, 557, 263 S. W. 825; State ex rel. v. Mason, 153 Mo. 23, 48, 54 S. W. 524.]  In the Smiley case just cited it was held that the Legislature may create a public office (as that of county counselor), potentially, to come into actuality upon the happening of a future contingency, such as the exercise of the power of appointment to such office conferred upon the county court.  But the blanket power "to appoint a traffic squad" and to "determine the number, grades and rates of salary" of the members of such squad does not create an office, or offices, potentially or otherwise; it confers *the power to create offices* indefinitely and at the pleasure of the donee of the power.

There is no hard and fast rule, applicable under all conditions and circumstances, for differentiating administrative from legislative powers, and the uncontrolled discretion given the board, in respect to arming and equipping a police force and providing such help, materials and provisions as it deems necessary to make the force and the department perfect and complete, might be regarded as relating to ministerial duties but for the fact that it operates as a power to

tax. Kansas City is required to pay all the expenses of the department. Section 7515 provides: "It shall be the duty of the board of police at the beginning of each fiscal year to estimate what sum of money will be necessary for the ensuing fiscal year to enable them to discharge the duties hereby imposed upon or entrusted to them, and they shall forthwith certify the same to the common council or municipal assembly of the city, who are hereby required in the first apportionment ordinance of that fiscal year to set apart and appropriate the amount so required, payable out of the next annual revenue of the city." And under Section 7516—"The board of police is hereby authorized to make requisition monthly upon the treasurer, comptroller or other disbursing officer or officers of the city as it may deem necessary for executing their duties for that month, and the sum so required shall be appropriated and by said disbursing officer or officers placed to the credit of the police department." The funds that find their way into the municipal treasury of Kansas City are derived from taxation. In requiring the city to pay from tax funds the expenses of the police department, the Legislature is in effect compelling it to levy taxes for that purpose. And in so far as the Legislature has delegated to the police board the power to determine, without legislative control or guidance of any sort, but at its own discretion, the amount of the city's revenue that shall be appropriated and expended for the maintenance of a police department, it has to that extent delegated to the board the power to tax. The power to levy a tax and the power to create a debt to be discharged by the levy of a tax are substantially the same thing. [Lovingston v. Wider, 53 Ill. 302, 305.]

The power to tax is a legislative power, and like other legislative powers is non-delegable, except in the case of municipal corporations, and where there is an express constitutional warrant. Section 1 of Article X of the Constitution provides:

"The taxing power may be exercised by the General Assembly for State purposes, and by counties and other municipal corporations, under authority granted to them by the General Assembly, for county and other corporate purposes."

Section 10 of the same Article is as follows:

"The General Assembly shall not impose taxes upon counties, cities, towns or other municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

These sections impose limitations upon the taxing power inherent in the legislative branch of the State government. But virtue of the limitations so imposed the Legislature can exercise the power for "State purposes" only; it must delegate to cities the power to impose taxes for "municipal purposes." If, therefore, the Legislature

can compel Kansas City to levy, collect and appropriate taxes for the maintenance of the police department of that city, it is because such maintenance is a "State purpose," and it has been so held. [State ex rel. v. Mason, 153 Mo. 23, 50.] Kansas City in levying, collecting and appropriating taxes under such compulsion is not exercising the taxing power delegated to it under its charter, but merely performing ministerial duties laid upon it by the statute.

Assuming that the creation and maintenance of a police force within and for Kansas City is a State and not a municipal function, a theory to which the writer is not committed, the Legislature may impose upon the property within the boundaries of the city a tax sufficient to meet the costs of such creation and maintenance. This it can do through an express enactment fixing the specific rate of taxation, or specifying the exact sum to be raised. Or it can impose upon an administrative board the duty of ascertaining the requisite amount, provided, it prescribes such conditions, rules, regulations and standards for such ascertainment that the municipal council or any taxpayer of the city can determine therefrom, just as well as the administrative board, the amount authorized by statute to be gathered from taxes for the maintenance of the police department. The statute in question, however, furnishes no such legislative guidance. On the contrary it confers upon the police board an unrestrained discretion to appropriate from Kansas City's revenues whatever sum or sums it deems necessary for the enlargement and maintenance of the police force and the police department. In doing so it delegates to the police board the legislative power to tax, in violation of the organic law. [State ex rel. Fargo v. Wetz, 5 A. L. R. 731, 748; 1 Cooley on Taxation (4 Ed.) sec. 78; See also State ex rel. v. St. Louis, 318 Mo. 870, 904, 2 S. W. (2d) 713.]

The Kansas City Police Act is without a parallel in the statute laws of this State. The insurance and other departments of the State government present to the Legislature biennially estimates of the funds necessary for their continued operation and maintenance. With these estimates before it the Legislature in the exercise of its own judgment makes such appropriations for the respective departments as it deems adequate or necessary. But the estimates of the department of police of Kansas City are not subject to legislative supervision or review. The police board without check or restraint of any kind may demand, and by force of the statute the custodian of Kansas City's revenues must stand and deliver. Under the statute relating to the police department of St. Louis, that city must set aside from its revenues the amounts necessary to pay the interest on the municipal indebtedness, the expenses of the city hospital, health department and for street lighting, and in addition the sums required by law to be placed to the credit of the sinking fund, before making any appropriation to meet the estimates of the police board. [Sec. 7551,

R. S. 1929.] And under Section 6369, Revised Statutes 1929, cities of the first class, having a population of less than 200,000, cannot be required to appropriate for the use of the police board in any fiscal year an amount of money in excess of one-sixth of the revenue for such year. No such limitations as these are found in the statute applicable to Kansas City; under its broad and unrestricted terms the entire revenue of the city is subject to appropriation by the board of police commissioners. So that between the unlimited forays which the board of police may make upon the city and the inhibitions imposed by Sections 10 and 11 of Article X of the Constitution which prevent it from increasing its revenue, its municipal functions may be greatly impaired, if not wholly destroyed. [Strother v. Kansas City, 283 Mo. 283, 223 S. W. 419.]

From the analysis which has been made of sections of said Article XXIII it is manifest that certain of its provisions, taken collectively, purport to confer upon the board of police of Kansas City the power to appropriate from the annual revenues of the city, at its discretion, whatever sums it deems necessary for the maintenance of the police department. The power to determine the amounts to be so appropriated is essentially a power to tax,—a legislative power, and as such non-delegable. The provisions of the statute purporting to confer the power are therefore void, and as they are inseparably interwoven with its other provisions the statute as a whole must fall with them. It has been suggested that the invalid provisions of the statute may be eliminated without affecting the remainder. But no complete or workable law would be left after the unconstitutional delegations of power are stricken from it. And this is true of the statute as it existed before the amendment of 1921 as it is now. Kansas City has ample authority under its charter to organize and maintain a department of police (Charter—Art. I, Sec. 27; Art. II, Sec. 32), until such time as the Legislature may in its wisdom see fit to provide for the city, by a constitutional statute, a system of metropolitan police.

Before concluding we desire to again refer to the cases of State ex rel. v. Mason, State ex rel. v. Jost and State ex rel. v. Beach, because relators insist that in those cases the question presented on the record in this has been ruled upon by this court adversely to the contention of respondents. We do not deem it necessary to enter upon an exhaustive review of the decisions in the cases just mentioned or the statutes with which they dealt. As to the Mason case it is sufficient to say that in passing upon the question of the delegation of legislative powers, with reference to a section found in an act passed in 1899 for the creation of a police force for the city of St. Louis, the court by an arbitrary and strained construction narrowly escaped the compulsion of de-. claring the section unconstitutional. The statute was shortly afterward repealed and one enacted in lieu of it which more fully con-

formed to constitutional requirements. The Mason case, rightly construed, is an authority for our holding in this. [153 Mo. l. c. 48.] We refer of course to its implications with reference to the delegation of legislative power. While there are many other questions discussed and ruled in the case, such as whether the *Legislature* may require a part or all of the revenues of a city to be appropriated to the support of a state controlled police department in preference to other departments of its municipal government and whether the imposition of the cost of such a police department effects taxation without representation, none of them has the slightest bearing on the single, clear-cut issue presented for decision on the record in the case now before us.

In the Jost case this language is found, and for some reason stressed by relators: "This statute places a limit upon every act of the commissioners, save and except the number of police districts, and as to that nothing is said. In every other respect there is a limit beyond which the board of police commissioners cannot go." That language was used with reference to Section 9787, Revised Statutes 1909. The section was repealed and reenacted in 1919 with many additions. [Laws 1919, p. 564; Sec. 8935, R. S. 1919.] It went through a similar process in 1921 (Laws 1921, p. 478), it being now said Section 7524 above set forth. With reference to the language quoted above two things may be said of it: First, it is wholly *obiter,* there was no question of the delegation of legislative powers in the case; and, second, if applied to the present Section 7524, its inaccuracy is glaring, as a reading of the section will disclose.

In the Beach case the constitutionality of the statute was in no respect challenged. Only its construction was in question. The court held in effect that what is now said Section 7524 did prescribe *some limitations,* but that said Section 7535 encompassed its grant of power with boundaries that were all but intangible. When the case was under submission here, some of us were then of the opinion that the statute was unconstitutional in that it attempted to delegate the power to tax, but that question could not be raised by the court, *ex mero motu,* in a case of that nature.

Relators in their briefs have quoted certain statements from Cooley on Taxation which, isolated from the context, seem to lend color to the soundness of their contention that the statute in question does not delegate the power to tax. We do not deem it necessary to set out of the full text of the learned author's disquisition on the delegation of the legislative power to tax. [1 Cooley on Taxation (4 Ed.) pp. 193 to 197 inclusive.] It is sufficient to say that the doctrine therein enunciated is not only in complete accord with the conclusion announced by the courts in many cases, but itself supports that conclusion, namely, that the delegation of an unlimited and uncon-

trolled power to create a debt to be discharged by taxation is the equivalent of the delegation of the power to tax. [Lovingston v. Wider, 53 Ill. 302; Metropolitan Utilities Dist. v. City of Omaha, 198 N. W. (Neb.) 858; State ex rel. v. Mayor of Des Moines, 103 Iowa, 76; Water Co. v. Steele, 20 Mont. 1; Commissioners of Wyandotte County v. Abbott, 52 Kan. 148.]

The alternative writ heretofore issued in this cause is quashed. *Ellison, Henwood, White* and *Gantt, JJ.*, concur; *Frank, J.*, dissents in separate opinion in which *Atwood, C. J.*, concurs.

FRANK, J. (dissenting)—I do not concur in the views expressed in the principal opinion and accordingly express my views in a dissenting opinion.

This is an original proceeding in mandamus brought by the Police Commissioners of Kansas City, to compel the City Council of that City to appropriate the sum of $1,442,425, the amount estimated by said Commissioners as the cost of maintaining the Police Department of Kansas City, for the fiscal year 1931-2.

What is now Article XXIII of Chapter 38, Revised Statutes 1929, creates and establishes within every city in the State having a population of 200,000 and less than 500,000 inhabitants a board of police, to be called the Police Commissioners, and through such board a system of metropolitan police. Pursuant to this statute a system of metropolitan police was set up in and for Kansas City. It is settled, not only by the former decisions of this court but by the weight of authority in other jurisdictions having constitutional provisions similar to our own, that the State has authority to provide by statute for a metropolitan police force for its cities, and compel them to pay the expense thereof by appropriations out of the city's revenues. [State ex rel. v. Mason, 153 Mo. 23, 54 S. W. 525, and cases cited; State ex rel. v. Jost, 265 Mo. 51, 175 S. W. 591; American Fire Alarm Co. v. Commissioners, 285 Mo. 581, 227 S. W. 114; 1 Dillon on Municipal Corporations (5 Ed.) p. 175, secs. 103, 104.] Respondents state in their brief that they do not question the right of the State to provide a system of metropolitan police for Kansas City, and require the city to pay the cost thereof. The contention is that in attempting to do so, the Legislature transgressed certain constitutional provisions.

The statute in question provides, among other things, the following:

"Section 7515. It shall be the duty of the board of police at the beginning of each fiscal year to estimate what sum of money will be necessary for the ensuing fiscal year to enable them to discharge the duties imposed upon or entrusted to them, and they shall forthwith certify the same to the common council or municipal assembly of the city, who are hereby required in the first apportionment or-

dinance of that fiscal year to set apart and appropriate the amount so required, payable out of the next annual revenue of the city. . . . [R. S. 1919, sec. 8926.]''

Pursuant to the mandate of this statute, the Police Commissioners estimated the cost of maintaining the Police Department of Kansas City, for the fiscal year 1931-2 at $1,442,425, and certified such estimate to the common council of the city. Upon the refusal of the council to appropriate the amount so estimated, this mandamus proceeding was brought to compel the making of such appropriation. In their return to the petition for the writ, respondents assert that Section 7515, supra, which requires the council to appropriate the amount estimated by the commissioners, as well as Sections 7516, 7524 and 7535 of the same statute which relate to the organization, equipment and maintenance of the Police Department are each unconstitutional and void.

The principal opinion holds that these statutes prescribe merely the nucleus of the personnel of the police force and confer upon the Police Commissioners an unlimited authority and an uncontrolled discretion with respect to appointing, organizing, arming and equipping a permanent police force for Kansas City. A reasonable construction of the statute does not justify this conclusion. Section 7524 of the statute makes specific provision for the appointment of the following officers and patrolmen and prescribes the limit of their salaries; chief of police, one chief of detectives, a secretary and assistant secretary of the board, one captain for each police district and two captains at headquarters, one lieutenant for each district, sergeants not to exceed four for each district, secretary to the chief of police, police surgeon, detective sergeants not to exceed one for each fifteen detectives, police detectives not to exceed one for every twelve patrolmen, patrolmen not to exceed one for every seven hundred inhabitants, police matrons, superintendent of police signal system, police signal operators not to exceed three for each police station, property clerks, janitors not to exceed one for each police station and chauffeurs not to exceed two for each police station.

As I read this statute, instead of prescribing a mere nucleus of the personnel of a police force and granting to the police commissioners an unbridled discretion to appoint, organize, arm and equip a permanent police force, it does the exact opposite. The basis of a permanent police force is the number of patrolmen. This statute expressly limits that number to one for every seven hundred inhabitants and provides for the necessary officers and other help. It is true the statute leaves some things, which we shall hereafter notice, to the discretion of the police board. Necessarily so, because the Legislature meets only once in two years, and it is a matter of common knowledge that such a body, if it attempted to do so, could not determine all facts necessary to the successful operation of a metro-

politan police force. In support of the holding that this statute is invalid, the principal opinion calls attention to the fact that while Section 7524 limits captains and lieutenants to one and sergeants to four for each police district, but Section 7535 without prescribing any conditions whatever gives the commissioners *carte blanche* to divide the city into as many police districts as they may see fit; that signal operators are limited to three, and janitors, turnkeys and chauffeurs to two for each police station, but there may be just as many police stations as the commissioners in their wisdom or caprice may establish.

The necessary result of this argument is that the statute is invalid because it affords an opportunity to the police board to indirectly increase the number of policemen and employees by creating police districts and establishing police stations. It is true the creating of a police district would add to the force, one captain, one lieutenant and four sergeants, and the establishment of a police district would add three signal operators, two janitors, two turnkeys and two chauffeurs. But even so, I do not agree that the delegation of authority to the police board to create police districts and establish police stations renders the statute invalid, because the delegation of such a power to the board is not the delegation of legislative authority. While the Legislature cannot delegate authority to make a law, it can delegate authority to determine such details as may be necessary to a successful administration of the law. The statute in question does not delegate legislative authority. The backbone of the force is the number of patrolmen and that number is limited to one for every seven hundred inhabitants of the city. The Legislature recognized that in the administration of the law, it would be necessary to divide the city into police districts, and it gave the board authority so to do. The statute limits the number of officers and employees that may be appointed in each police district. The same provision is made as to police stations. The only thing left to the discretion of the board is the number of police districts and stations.

Of necessity, a legislative body could not undertake to determine all the facts incident to the successful operation of such a law. The necessary number of police districts and stations depends upon conditions existing in the city, and such needs may increase or diminish with the growth of or changing conditions in the city. The delegation of authority to the police board to divide the city into police districts and establish police stations is a permissive administrative regulation. While the reasonableness of such administrative regulations might be subject to review by the courts, they do not amount to a delegation of legislative power in violation of the Constitution. [Bailey v. Van Pelt, 78 Fla. 337; 352.] ''There are many things upon which wise and useful legislation must depend, which cannot be known to a lawmaking power, and must, therefore, be a subject of inquiry and

determination outside the halls of legislation." [State v. Thompson, 160 Mo. 333, 345, 60 S. W. 1077.] No claim is made in this case that the authority given the board to establish police districts and stations is arbitrary or unreasonable. Neither is it claimed that the board, in the exercise of the authority granted to it, has created more districts or stations than is necessary for the successful operation of the Police Department. The contention is that the authority granted the board to establish police districts and stations is delegation of legislative power to the board. For the reasons heretofore stated, this contention cannot be upheld. The authority of the police board of Kansas City to establish police districts was discussed by this court en banc in the case of State ex rel. v. Jost, 265 Mo. 51, 79, 175 S. W. 591. We there said:

"It may also be true that such commissioners are left to fix the number of police districts; and if they increase or decrease the number, it makes but little change in the force. The basis of the force, under the statute, is the number of patrolmen, and that number cannot exceed one for every 700 population. To add a district would only add one captain, one lieutenant, and four sergeants. To cut off a district would only cut off these six men. The law was intended to be flexible, and rightfully so, but this does not make it violative of any constitutional provision."

It is claimed that the constitutional question invoked in the instant case was not raised in the Jost case and for that reason what we there said is *obiter dictum* and therefore, not a precedent. That may be true, but if it be good logic, the fact that it might be *obiter* in the Jost case, does not prevent us from adopting it as the law in this case, and for the reasons heretofore stated, I think we should do so.

Attention is also called to the following provision of Section 7524:

"In addition to the above enumerated police officers, the board of police commissioners shall have the power and authority to appoint a traffic squad and said board shall have the power to determine the number, the grades and the rate of salary, and shall have the power to employ such numbers as they deem necessary from time to time. The salaries of officers and patrolmen of the traffic squad shall not exceed those paid to officers and patrolmen of like grade in the regular force of the department as herein prescribed."

The principal opinion holds that the patrolmen constituting a traffic squad are state officers, and the positions filled by them are public offices. The opinion also holds that the attempted delegation to the board of police of the power to create such offices is clearly void. State ex rel. v. Smiley, 304 Mo. 549, 557, 263 S. W. 825, is cited in support of such holding. We agree that members of a traffic squad are public officers, and the positions filled by them are public offices. We also agree that the Legislature cannot delegate to the board of police authority to create a public office. But we do not agree that

the statute in question delegated such authority to the board of police, and in my judgment, the Smiley case cited in the opinion is not an authority for holding that it does. The statute construed in the Smiley case provides that counties containing one hundred thousand inhabitants or more might, in their discretion, appoint a county counselor. Contention was made that the statute was invalid on the ground that it attempted to delegate to the county court authority to create the office of county counselor. This court en banc held otherwise. We there said, "The statute itself creates the office, potentially, to come into actuality upon the happening of a future contingency; namely, the exercise of the power of appointment conferred by it upon the county court." If a statute authorizing a county court to appoint a county counselor, creates that office, by the same token, a statute authorizing the board of police to appoint a traffic squad, creates such offices.

The principal opinion calls attention to the provision of the statute which authorizes the board of police to arm and equip a police force, to provide itself with "such clerks and other help as may be necessary for the transaction of its business . . . and furnish all the necessary materials, and provisions for a perfect and complete organization and equipment of the police force and police department of the city."

It would be impractical for the Legislature to attempt to detail the kind and amount of equipment necessary to enable the police department to successfully cope with crime in a great city, or to specify the number of clerks or other employees necessary to a successful administration of the law. The statute declares the general public purpose, limits the force as far as is practical and leaves the details of the administration of the law to the discretion of the board. "The Constitution itself does not require the impracticable or the impossible." [Trimmier v. Carlton (Tex.), 296 S. W. 1070, 1082.] Multiplied instances of this character of legislation could be noted. For example, the Public Service Commission Act (Sec. 5129, R. S. 1929) provides as follows:

"The commission shall have power to employ, during its pleasure, such clerks, stenographers, rate experts, agents, special agents, examiners, engineers, accountants, auditors, inspectors, experts and other employees as it may deem to be necessary to carry out the provisions of this and other laws, or to perform the duties and exercise the powers conferred by law upon the commission."

The gist of the holding in the principal opinion is that the statutory provisions heretofore discussed, which give the police board a discretion in respect to arming and equipping a police force and providing such help, materials and provisions as it deems necessary to make the force and the department perfect and complete, might be regarded as relating to ministerial duties but for the fact that it oper-

ates as a power to tax, and therefore amounts to an unlawful delegation of the taxing power to the police board. This conclusion is not sustained by the authorities. We held in the Mason case, supra, that the State levies the tax. We there said:

"The argument that a board without responsibility to the municipality levies the tax is utterly without foundation. The State levies and requires one of its own agencies to collect and pay over the tax to liquidate a certain, not an unlimited, sum, when demanded by its other agency, the board; and it does not lie in the mouth of the city to plead other obligations as superior to the demands of its creator."

Attention is called to the fact that the statute construed in the Mason case is different from the statute involved in this case in that it requires the council to deduct from the revenue of the city the amount necessary to pay the interest upon the indebtedness of the city, the amount necessary for the expenses of the city hospital and health department, the amount necessary for lighting the city, and the sum required by law to be placed to the credit of the sinking fund of the cities, before paying the amount certified and demanded by the police board, while the statute involved in the instant case requires the council to appropriate the sum certified to it by the board of police regardless of the needs of other departments of the city.

The fact that the statute construed in the Mason case required that the amount necessary to care for the needs of certain other departments of the city should be deducted from the city revenues before paying the demands of the police board, furnishes no reason for saying that a statute which does not make such requirements, or in some way limit the demands of the police board, is unconstitutional. The State is the source of all power to collect revenue in the city, and has authority to require the city to pay the estimated needs of the police board in preference to equally necessary needs and demands of other departments of the city. We so held in the Mason case. We there said:

"The query of learned counsel for the auditor, 'Has the General Assembly the further power to require such appropriation to be made in preference to appropriations for other equally necessary departments out of *any revenue* of such cities, as is attempted by the thirteenth section of the act of March 15, 1899?' is unhesitatingly answered in the affirmative. The State is the source of all power in the city to collect revenue at all, and has the same power over the revenue of the city collected under and by virtue of the laws of the State as it has over state and county revenue, and can require such portion as it may direct to be paid to the support of its constabulary, in preference to any purpose which the city might perchance deem more essential. [Ray Co. v. Bentley, 49 Mo. 236; State v. Board of Education of City of St. Louis, 141 Mo. 45, 41 S. W. 924; State

v. Field, 119 Mo. 593, 24 S. W. 752; State v. Owsley, 122 Mo. 68, 26 S. W. 659.]"

The opinion in the Mason case quotes approvingly from Judge DILLON and Judge COOLEY the following:

"Judge DILLON, in his admirable work on Municipal Corporations, in note 1 to section 60 says: 'There is nothing in the maxim that "taxation and representation go together," that can preclude the Legislature from establishing in a city a metropolitan police board, with power to estimate the expenses of the police, and compelling the city authorities to raise by taxation the amount so estimated. Every city is represented in the State Legislature, and it is for that body to determine how much power shall be conferred by the municipal charters which it grants.'

"Judges COOLEY and DILLON in these extracts clearly sum up the result of the authorities. Thus, in People v. Mahaney, 13 Mich. 481, an act of the Legislature creating a board of police commissioners for Detroit was assailed as unconstitutional, but it was successfully defended by the court in an opinion by Judge COOLEY. One remark in the opinion is peculiarly applicable here. He says: 'The taxation under this act, it is said, is really in the hands of the police board, a body in the choice of which the people of Detroit have no voice. This argument is one which might be pressed upon legislative department with great force, *if it were true in fact*. But, as the people of Detroit are really represented throughout, the difficulty can hardly be regarded as fundamental. They were represented in the Legislature which passed the Act, and had the same proportionate voice there with the other municipalities in the State, all of which received from that body their powers of local government, and such only as its wisdom shall prescribe within the constitutional limit.'"

Judge COOLEY in his valuable work on Taxation, Vol. 1 (4 Ed.) page 196, says:

"It is never assumed by the people that the Legislature can take such supervision of all the infinite variety of interests in the State, and of all local as well as general affairs, as to be able to determine in every instance precisely what is needed in matters of taxation, and precisely what purposes shall at any time, under the particular circumstances, be provided for. There is a difference between making the law and giving effect to the law; the one is legislation and the other administration. We conceive that the Legislature must, in every instance, prescribe the rule under which taxation may be laid; it must originate the authority under which, after due proceedings, the tax gatherer demands the contribution; but it need not prescribe all the details of action, or even fix with precision the sum to be raised or all the particulars of its expenditure. If the rule is prescribed which, in its administration, works out the result, that is sufficient; but to refer the making of the rule to another authority, would be in ex-

cess of legislative power. For instance, the Legislature, with the utmost propriety, may provide for a court of claims or a state board of audit, whose adjudications against the State shall be final upon it; and may direct that the amounts awarded shall go into the general levy for the year. Here is a rule to be properly worked out by a proper agency."

It may be that a statute which requires a city to pay for the support of the police department, whatever amount the board of police may estimate, without limitation as to the amount that may be estimated, is an unwise law, but the wisdom of legislation is a question for the lawmakers and not the courts. [State ex rel. v. Jost, supra.]

It is said in the principal opinion that the reasons given for holding the statute unconstitutional should not be construed as in any wise going to the constitutional validity of the statutes creating police systems for the City of St. Louis and for cities of the first class operating under general law, because those statutes differ radically from the one now in judgment.

Section 6367, Revised Statutes 1929, applicable to cities of the first class, makes the following provision as to the police board: "Said board shall appoint such subordinates as they may need, at such compensation as may be fixed by the board. Said board may divide the city into the needful number of police districts, and provide each of them, if necessary, a station house or houses, with all things and attendants required for the same, and such other accommodations as may be required for the use of the police." Section 6364 limits the number of captains, lieutenants and sergeants that may be appointed in each district, but there is no limitation on the number of districts that may be created or the stations that may be provided. There is no limitation on the number of subordinates the board may appoint or the compensation it may pay them. Section 6363 of the same statute empowers the board to arm and equip the police force as they may judge necessary.

It appears to me that if the statutes applicable to Kansas City are unconstitutional because they delegate to the board of police the power to tax, the statutes applicable to first class cities operating under the general law are subject to the same objection.

It is true that the general law applicable to first class cities provides that in no event shall a common council be required to appropriate for use of the police board in any fiscal year an amount of money in excess of one-sixth of the revenue of such year. But the fact that these statutes so provide furnishes no reason for holding that the statute applicable to Kansas City is void because it does not place a limit on the amount to be appropriated for the use of the

police board. We so held in the Mason case to which we have heretofore called attention.

For the reasons stated, I respectfully dissent. *Atwood, C. J.,* concurs.